ELMA LEWIS *vs.* MARVIN ANTELMAN.

Suffolk.    March 18, 1980. — July 9, 1980.

Present: HALE, C.J., PERRETTA, & NOLAN, JJ.

*Practice, Civil,* Summary judgment.    *Libel and Slander.*

Upon retransfer of a libel action to the Superior Court after entry of judgment for the defendant in the Municipal Court of the City of Boston, the judge erred in denying the defendant's motion for summary judgment where neither the plaintiff's affidavits, one merely attempting to bring a memorandum opinion of the Municipal Court judge before the Superior Court and the other asserting that, as to a small group of people identified therein, the plaintiff was not a public figure, nor the interrogatories and answers to them were sufficient to raise any genuine issue of material fact.    [224-227]

TORT.    Writ in the Superior Court dated August 10, 1971. After transfer to the Municipal Court of the City of Boston and retransfer to the Superior Court, a motion for summary judgment was heard by *Vallely,* J., and the case was tried before *Linscott,* J.

*Joseph M. Cohen* for the defendant.

*Alan R. Hoffman* for the plaintiff.

HALE, C.J.    The plaintiff brought an action in the Superior Court for libel and tortious interference with advantageous relationships.    According to her complaint, as amended, the plaintiff was the director of the Elma Lewis School of Fine Arts, Inc., and of the National Center of Afro-American Artists, Inc.    The amended complaint incorporated a press release allegedly published by the defendant on July 22, 1971, and singled out four statements as the bases for her action.    Those statements are set out in the margin.[1]    The

---

[1] "In her efforts of blackmail, Elma Lewis publicly disclaimed any connection with the series of unexplained fires set in the building or with

press release was printed on the stationery of a group called the Jewish Survival Legion. The letterhead carried the defendant's name and his title as National Coordinator. The document purports to describe the circumstances surrounding the acquisition of a building by the plaintiff's school. In his answer, the defendant denied the allegations of the plaintiff's complaint and raised the alternative defenses of privilege, truth, good faith belief that the statements were true, and that the plaintiff was a public figure and the statements constituted fair comment on her activities.

The action was transferred to the Municipal Court of the City of Boston (District Court) for trial. That court entered judgment for the defendant on May 10, 1973; the plaintiff did not appeal to the appellate division of the District Court. The action was then retransferred to the Superior Court under G. L. c. 231, § 102C.

Section 102C provides that upon a request for retransfer, the clerk of the District Court shall transmit to the Superior Court the decision or finding of the District Court judge, the original papers filed in the Superior Court before transfer, and those filed in the District Court. Approximately twenty-six months after retransfer, the defendant moved for summary judgment. The relevant contents of the record in the Superior Court at that time were the decision of the District Court judge, the amended declaration, the answer, the plaintiff's interrogatories to the defendant, and the defendant's answers to them.[2] The plaintiff's attorney added an

---

the terror and assaults on the persons of Jewish school children at the school . . . .

"[S]he asked for the phone, got Mayor White on the phone and promptly informed him that Boston would burn unless she got her insurance.

"Elma now began to teach neighborhood children to hate Jews.

"The City of Boston saw it [*sic*] fit to award her $3,000 to clean up Franklin Park. These events led to the subsequent rapes, robberies, beatings and murders of Jews in the neighborhood. Mattapan became a Jewish concentration camp without walls. It was here that attrocities [*sic*] were performed on a daily basis on its Jewish inmates."

[2] A single justice of this court denied the plaintiff's motion to file a supplementary appendix containing a transcript of the trial in the District

affidavit in opposition to the motion. The motion was denied on March 23, 1976.

On June 11, 1976, the defendant moved for reconsideration of the denial of summary judgment. This request was premised on *O'Brion, Russell & Co.* v. *LeMay*, 370 Mass. 243 (1976), which was decided after the earlier motion had been denied. In *O'Brion* the Supreme Judicial Court held that a District Court decision for the party moving for summary judgment in Superior Court "was sufficient to shift . . . [to the party who lost in the District Court] the burden of making a response setting forth specific facts showing that there was a genuine issue for trial." *Id.* at 245. The motion to reconsider was allowed on October 20, 1976, and the parties were given thirty days in which to file affidavits. On motion of the plaintiff, that time was extended to December 3, 1976, on which day the plaintiff filed a further affidavit, by one Baker, in opposition to the motion for summary judgment. We set out the material parts of that affidavit in the margin.[3] The motion for summary judgment was again denied.

---

Court as it did not appear as part of the record. The plaintiff then filed a motion in the Superior Court pursuant to Mass.R.A.P. 8(e), 364 Mass. 851 (1974), to correct the record to show the transcript as having been filed in the District Court; a judge of the Superior Court denied the motion. While the propriety of neither action is before us, we note that such a transcript (or other record of the District Court trial) is inadmissible in the Superior Court upon retransfer. See *Lubell* v. *First Natl. Stores, Inc.*, 342 Mass. 161, 163 (1961); *Henry* v. *Mansfield Beauty Academy, Inc.*, 353 Mass. 507, 508 (1968).

[3] "2. During September of 1965, I moved to Cambridge, Massachusetts from my home in Fort Mitchell, Kentucky to attend Harvard University.

"3. During my four years of matriculation at Harvard I regularly read the Boston Globe, listened to local radio stations, and watched local television broadcasts. Never during that period of time from 1965 through 1969 do I remember having heard of Elma Lewis.

"4. After graduating from college, I remained living in Cambridge and moved to my present address in September of 1970. I was working at Harvard University as a laboratory technician. From June 1969 until July 22, 1972, I regularly read the Boston Globe, listened to local radio stations, and watched local television broadcasts. Never during that period of time from June 1969 through July 22, 1972, do I remember having

Following an extensive trial, judgment was entered for the plaintiff upon a jury verdict. The defendant raises several issues on appeal, but we need address only one — whether the Superior Court erred in denying the defendant's motion for summary judgment.

General Laws c. 231,§ 102C, as amended through St. 1975, c. 377, §§ 102 and 102A, provides that a "decision . . . by a district court shall be prima facie evidence upon such matters as are put in issue by the pleadings . . . ." Unless rebutted by evidence to the contrary, the District Court judge's decision required a judgment for the defendant as a matter of law. *O'Brion, Russell & Co.* v. *LeMay*, 370 Mass. at 245.

In opposing the defendant's motion, the plaintiff relied upon the affidavits of her attorney and Baker, the interrogatories, and the answers to them. The plaintiff attempted to bring a memorandum opinion, which had been written by the District Court judge prior to the entry of judgment for the defendant, before the Superior Court judge by attaching it to the affidavit of her attorney. That document was not an original paper within the meaning of § 102C. Although the memorandum was physically before the Superior Court, the express language of § 102C ("and no other findings of such court shall at any time be admissible as evidence or become part of the pleadings") precluded its consideration by the court.

---

heard of Elma Lewis.

"5. In September of 1971, my wife, Judith Baker started teaching in Roxbury at the Jeremiah E. Burke High School, a public high school for girls. Although my wife regularly spoke of important people and events in and around her school including community leaders she never to my knowledge spoke of Elma Lewis before July 22, 1972. Insofar as my wife was teaching a predominantly black school in an area in close proximity to the Elma Lewis School, if Elma Lewis were a well-known public figure it would have been likely for my wife to tell me of her activities.

"6. Although my wife and I had many social contacts during 1969-July 22, 1972 in the black communities of Roxbury and Dorchester, never during that period of time did I hear any friends or acquaintances mention Elma Lewis by name."

The Baker affidavit is addressed to whether the plaintiff was a public figure. We cannot regard it as setting forth specific facts showing that there was a triable issue, *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 559 (1976), whether the plaintiff was a public figure under *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323 (1974), and *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849 (1975).

That Baker did not remember the plaintiff's being mentioned in the newspapers or on radio or television from 1969 to July 22, 1972, speaks only to the contents of his memory in 1976, not to whether the plaintiff was a public figure on July 22, 1971. That Baker's wife, though employed as a teacher in a school located near one named for the plaintiff, never to Baker's knowledge spoke of the plaintiff between September, 1971 (two months after the publication of the defendant's alleged statements), and July 22, 1972 (although she regularly spoke to Baker of community affairs), simply emphasizes that in December, 1976, he did not remember having heard of the plaintiff prior to July 22, 1972. Nor does the averment that from 1969 to July 22, 1972, he did not hear his black acquaintances from Roxbury and Dorchester mention the plaintiff by name do anything to advance the plaintiff's position.

Taken as a whole, the broadest inference that the affidavit will support is that one person or a small group of people did not know or speak of the plaintiff. Vague assertions about the plaintiff's celebrity among a small group of people are not the specific and articulable facts concerning her status as a public or private figure that were necessary to rebut the effect of the District Court's decision.

The result might have been different had the plaintiff, or someone who knew her, supplied an affidavit describing the nature and extent of her involvement in community or public affairs. Such an affidavit, articulating specific facts, might have indicated that the plaintiff's activities were such as would preclude her from being considered a public figure for any purpose. It is such an affidavit that might have raised a genuine issue of material fact whether the plaintiff

was a public figure and thus have been sufficient to rebut the District Court decision. See *O'Brion, Russell & Co.* v. *LeMay*, 370 Mass. at 245. The answers to the interrogatories are essentially neutral. In her opposition to the motion, the plaintiff relies only on the interrogatories and answers that concern the defendant's failure to answer a letter from her attorney that inquired into the defendant's connection with the press release.[4] She contends that the defendant's not answering the letter was a sufficient demonstration that he published his statements with actual malice to rebut the prima facie effect of the District Court's finding. We disagree. The defendant was under no obligation to reply to the letter. His failure to answer the letter is not evidence of the truth of the facts therein stated. *Kumin* v. *Fine*, 229 Mass. 75, 76 (1918).

The affidavit of the plaintiff's attorney avers, and the plaintiff now argues, that the District Court decision should not control, as the judge applied the definition of a public figure under *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964), and *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29 (1971), which has since been largely superseded by *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323 (1974). From this the plaintiff reasons that there was a new and different issue of material fact for the jury in the Superior Court from that which had been before the District Court judge. There can be no doubt that there may be different questions as to who is a public figure since *Gertz*. The Metromedia standard that any private person caught up in a story of public interest is a public figure was rejected in *Gertz*. *Gertz* also provides for two classes of public figures. "In some instances

---

[4] Q: "Did the defendant receive a letter dated July 22, 1971, signed by [the plaintiff's attorney], a copy of which is attached to these interrogatories?"

A: "Yes."

Q: "Please describe the contents and substance of any reply made by the defendant."

A: "I made no reply because by the time I saw the letter I had already been served the writ in this action and felt I was under no obligation to reply."

an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions." *Gertz* v. *Robert Welch, Inc.*, 418 U.S. at 351. See *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 855-859 (1975). That there are new bases for determining whether a person may be designated a public figure does not save the plaintiff from the burden of having to offer, in an affidavit or other appropriate form, evidence which would indicate to the court that there was a genuine issue of material fact as to whether the plaintiff was a public figure, either for all purposes or for a limited range of issues.

It is not the function of an affidavit to bring a legal argument before the trial court. Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). 6 Moore's Federal Practice par. 56.22[1] (1976). That is the function of a memorandum of law.

We have viewed the plaintiff's affidavits in the light most favorable to her, *Hub Associates, Inc.* v. *Goode*, 357 Mass. 449, 451 (1970), and have concluded that on the record before the judge there was no genuine issue of material fact and that the defendant was entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *O'Brion, Russell & Co.* v. *LeMay*, 370 Mass. at 245. See also *Fulton* v. *Gauthier*, 357 Mass. 116, 117-118 (1970).

*Judgment reversed.*

*Judgment for the defendant.*