DOROTHY ELLIS & others[1] vs. SAFETY INSURANCE CO. & another.[2]

No. 94-P-1879.

Suffolk. February 21, 1996. - November 18, 1996.

Present: PORADA, LAURENCE, & LENK, JJ.[3]

*Practice, Civil,* Summary judgment. *Insurance,* Motor vehicle insurance. *Emotional Distress. Libel and Slander. Privacy. Contract,* Insurance, Performance and breach. *Consumer Protection Act,* Unfair or deceptive act, Insurance. *Civil Rights,* Availability of remedy.

In a civil action in which the plaintiffs did not properly allege a claim of intentional infliction of emotional distress and did not produce sufficient evidence of harm on their claims of negligent infliction of emotional distress, the judge correctly ordered summary judgment in favor of the defendants on those claims. [634-635]

In a civil action in which the plaintiffs did not demonstrate either personal knowledge of or sufficient facts regarding the defendants' alleged publication of a slanderous statement, the judge correctly allowed the defendants' motion for summary judgment on that claim. [635-636]

In a civil action in which the three plaintiffs alleged that the defendants slandered them, the judge correctly granted the defendants' motion for summary judgment with respect to two of the plaintiffs where the defamatory statement was not "of and concerning" them, and the judge should have denied the defendants' motion with respect to the third plaintiff to whom direct reference was made in the defamatory statement. [636-637]

In a civil action alleging a claim of invasion of privacy, summary judgment should not have been ordered in favor of the defendants where material facts were plainly in dispute. [637-638]

In a civil action brought by an insured against an insurer for breach of contract in failing to pay a claim, summary judgment was correctly ordered in favor of the defendants, according to the then applicable law,

---

[1]Anthony Goodnews Eneonye and Hayde Little.

[2]Frank C. Donahue, Jr.

[3]Following oral argument, Justice Ireland discovered he had a conflict and recused himself from the case, transferring it to the single justice. As single justice, Justice Porada reviewed the tapes from oral argument and the submissions of the parties, and participated in the panel's decision on the case.

on uncontroverted evidence of the substantial and material breach of the insured's duty to cooperate. [638-639]

In a claim brought against an insurer by an insured and two household members asserting a violation of G. L. c. 93A, § 2, arising from the insurer's investigation of a claim filed by the insured, the plaintiffs presented sufficient evidence of racial harassment in the course of the insurer's investigation to warrant the denial of the insurer's motion for summary judgment. [639-641]

In an action in which three plaintiffs asserted their civil rights were violated under G. L. c. 93A, § 102, as inserted by St. 1989, c. 332, by the actions of an insurance company investigating a claim, only the one plaintiff who had purchased coverage from the insurer had standing to maintain a claim under the statute [641], and where disputed material facts were raised by that plaintiff in opposition to the defendants' motion for summary judgment, the judge should have denied the motion [641-642].

CIVIL ACTION commenced in the Superior Court Department on November 18, 1991.

The case was heard by *Elizabeth B. Donovan, J.,* on a motion for summary judgment.

*Damon Scarano* for the plaintiffs.

*Laurie J. Condos* for the defendants.

LENK, J. Two of the plaintiffs are family members: Dorothy Ellis and Hayde Little are daughter and mother. The third plaintiff, Anthony Goodnews Eneonye (Goodnews), and Little are friends and housemates. Ellis, Little and Goodnews appeal from the entry of summary judgment against them on all six counts of their complaint, which essentially arises out of Ellis's ownership of a Jaguar automobile insured by defendant Safety Insurance Co. (Safety). Safety refused to settle Ellis's claim after she reported her automobile stolen. The plaintiffs allege that, in the process of investigating Ellis's claim, Safety's investigator, defendant Frank Donahue, committed racially motivated acts of harassment against them. Safety and Donahue deny that any such acts occurred and maintain that Safety's refusal to pay Ellis was properly based upon Ellis's failure to fulfill a condition precedent to her recovery under the insurance policy.

The plaintiffs brought this complaint against Safety and Donahue in six counts. Ellis alleged a breach of contract by Safety in Count I for failing to pay her claim. In Count II, Ellis, Goodnews and Little alleged that Safety acted unfairly and deceptively, in violation of G. L. c. 93A, in the course of

investigating Ellis's insurance claim. All three plaintiffs alleged that the two defendants negligently or intentionally inflicted emotional distress upon them (Count III), slandered or libelled them (Count IV), invaded their privacy in violation of G. L. c. 214, § 1B (Count V), and violated their civil rights contrary to G. L. c. 93, § 102 (Count VI).

The defendants moved for summary judgment on all counts pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974), supported by the affidavits of Donahue and several of Safety's other agents, as well as unanswered requests for admissions, Mass.R.Civ.P. 36(a), 365 Mass. 795 (1974), propounded upon the plaintiffs. In opposition, the plaintiffs offered their own affidavits, as well as the affidavit of a former Safety manager, Philip Cohen. The Superior Court judge originally granted the motion for summary judgment only as to Counts II through VI, but after the defendants' motion for reconsideration, granted summary judgment as to Count I as well. The plaintiffs appeal. For the reasons discussed, we affirm in part and reverse in part.

Summary judgment shall be granted where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553 (1976). Mass.R.Civ.P. 56(c). The moving party bears the initial burden of affirmatively demonstrating the absence of a genuine issue of material fact and of entitlement to judgment as a matter of law. *Pederson* v. *Time, Inc.,* 404 Mass. 14, 17 (1989). All reasonable inferences drawn from the material accompanying a motion for summary judgment "must be viewed in the light most favorable to the party opposing the motion." *Attorney Gen.* v. *Bailey,* 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982), quoting from *Hub Assocs., Inc.* v. *Goode,* 357 Mass. 449, 451 (1970).

*Undisputed facts.* Safety Insurance Company issued Ellis an automobile insurance policy, which covered her 1985 Jaguar XJ6 from August 24, 1989, to August 24, 1990. On September 26, 1989, Ellis reported to Safety that the Jaguar had been stolen. Safety assigned Ellis's claim to its investigator, Donahue.

Ellis's insurance policy with Safety contained a clause which stated that, in the event of a claim, "[w]e may also

require you to submit to an examination under oath." Safety scheduled Ellis for an examination under oath on April 23, 1990, but she did not attend. She also failed to appear for two rescheduled examinations. On August 6, 1990, Safety notified Ellis through counsel that it assumed she no longer sought payment on her claim, as she neither submitted to the examination under oath nor supported her claim with other documentation.

In January, 1991, Ellis notified Safety that her Jaguar had been found.[4]

*Facts in dispute.* The defendants assert that no acts of racial impropriety occurred during the investigation of Ellis's claim and insist that Safety ultimately refused to settle Ellis's claim because she failed to submit to the examination under oath. In his affidavit, Donahue maintains, "At no time during my investigation of the claim of Dorothy Ellis did I harass or intimidate any of the plaintiffs in this action." The plaintiffs respond with their recitation of events occurring during Donahue's investigation. Philip Cohen, Donahue's former supervisor, states in his affidavit that he observed Donahue harass and intimidate minority insureds for a period of one and one-half years. Cohen attests that he "had many discussions with Frank Donahue concerning his hostile behavior and treatment of insureds, especially minorities whom Donahue admitted to me he had a dislike for." One conversation between Cohen and Donahue involved the harassment and intimidation of Dorothy Ellis. Cohen reiterated his concerns about Donahue's behavior in a written memorandum to Safety's vice-president and assistant vice-president. Cohen discloses that Donahue called Ellis a phony and told him that Ellis had submitted a fraudulent claim. Goodnews states in his affidavit that Donahue followed him around in a light blue Chevrolet automobile.[5] In her affidavit, Little states that "Donahue called me up numerous times at home and

---

[4]In their complaint, the plaintiffs allege that in January, 1991, the vehicle was found in Boston and that Ellis placed the automobile in a garage to be repaired. The plaintiffs, contrary to the defendants' contention that the motor was damaged, also allege that there was nothing wrong with the engine of the automobile. Ellis duly notified Safety that the vehicle was found. The defendants, in their answer, admit only that they were notified that the car was found.

[5]Goodnews also states in his affidavit that on the telephone Donahue malevolently inquired about his immigration status. This assertion would

work, making the statement 'How can you people (blacks) afford this type of car.' " She also asserts that Donahue followed her "extensively" in the same light blue Chevrolet and waited "in front of my home on numerous occasions." Ellis similarly attests that Donahue followed her and her husband in the light blue Chevrolet, that Donahue had asked her in a telephone conversation, "How can you black people afford this type of expensive car?" and that Donahue had intimidated her and her husband.

*Negligent and intentional infliction of emotional distress.* The three plaintiffs allege that the defendants both negligently and intentionally inflicted emotional distress upon them. In order to survive a motion for summary judgment, a claim of negligent infliction of emotional distress requires, inter alia, that the plaintiffs "corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial." *Sullivan* v. *Boston Gas Co.,* 414 Mass. 129, 137-138 (1993). *Payton* v. *Abbott Labs,* 386 Mass. 540, 555 (1982). The plaintiffs in the instant case have not satisfied this burden and their claim, thus, fails.

Similarly, in order to recover for the intentional infliction of emotional distress, the plaintiffs must allege in their complaint that they have suffered severe emotional distress caused by the defendant's intentional, outrageous conduct. *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 145 (1976). As the

bolster Goodnews's allegations of harassment but is negated because he failed to respond to the requests for admissions propounded upon him by the defendants pursuant to Mass.R.Civ.P. 36(a). Pursuant to rule 36(a) & (b), failure to respond to a request for admissions results in the admission and conclusive establishment of matters contained in the request, unless the court allows withdrawal or amendment of the admissions. *Reynolds Aluminum Bldg. Prod. Co.* v. *Leonard,* 395 Mass. 255, 259-260 (1985). *S. Kemble Fischer Realty Trust* v. *Board of Appeals of Concord,* 9 Mass. App. Ct. 477, 479 n.3 (1980). Curiously, the plaintiffs here never moved to withdraw or amend the admissions. For purposes of summary judgment, a plaintiff's affidavit may not be used to contradict previous statements made by the plaintiff under oath at a deposition or in the form of an interrogatory. *Phinney* v. *Morgan,* 39 Mass. App. Ct. 202, 207 (1995). Furthermore, an affidavit is an improper way to respond to unanswered requests for admissions or refute admissions that are deemed, under rule 36(a), to have been made. *Danis* v. *Bridge Enterprises, Inc.,* 8 Mass. App. Ct. 930, 931 (1979). By failing to respond, amend or withdraw, Goodnews admitted that "Mr. Donahue had no contact with [him] by telephone."

plaintiffs have not so alleged, their claim for intentional infliction of emotional distress also fails. The allowance of summary judgment for defendants on Count III was, therefore, proper.

*Libel and slander.* The three plaintiffs allege that on two occasions the defendants committed the "tort of slander, libel" by expressing to third parties false statements that the plaintiffs had committed insurance fraud. Ellis and Little state in their affidavits that Donahue "went to [Enoch's] garage and told them not to repair the car, this was fraud." Cohen, Safety's former employee, states in his affidavit that "Frank Donahue informed me on several occasions Dorothy Ellis was a phony and submitted a fraudulent claim."[6] As the statements are alleged to have been spoken rather than written, they are classified as slander only. See Restatement (Second) of Torts § 568 (1977). The elements of a slander claim, in relevant part, are the publication of a false and defamatory statement by spoken words of and concerning the plaintiff. *Id.* at §§ 558, 568.

The court must decide as an initial matter whether each of the statements at issue is reasonably susceptible of a defamatory meaning. *Foley* v. *Lowell Sun Pub. Co.,* 404 Mass. 9, 11 (1989). Submitting a fraudulent insurance claim is a crime pursuant to G. L. c. 266, § 111A.[7] Imputation of a crime is defamatory per se. *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 853 (1975). *Draghetti* v. *Chmielewski,* 416 Mass. 808, 812 (1994). Donahue's accusations of fraud,

---

[6]As the defamatory statement can reasonably be found to have been uttered in the course of Donahue's employment, Safety is subject to liability under the doctrine of respondeat superior. Safety, however, does not contest its liability on these grounds. See *Galvin* v. *New York, New Haven & Hartford R.R.,* 341 Mass. 293, 296 (1960), and cases cited.

[7]General Laws c. 266, § 111A, reads in part:

"Whoever, in connection with or in support of any claim under any policy of insurance issued by any company . . ., and with intent to injure, defraud or deceive such company, presents to it, or aids or abets in or procures the presentation to it of, any notice, statement, [or] proof of loss . . ., knowing that such notice, statement, [or] proof of loss . . . contains any false or fraudulent statement or representation . . ., shall . . . be punished by imprisonment in the state prison for not more than five years or by imprisonment in jail for not less than six months nor more than two and one half years or by a fine of not less than one hundred nor more than five hundred dollars, or by both such fine and imprisonment in jail."

imputing criminal conduct, are therefore capable of a defamatory meaning.

In order to be actionable, the statements must have been published, i.e., communicated to at least a single individual other than the person defamed. *Brauer* v. *Globe Newspaper Co.*, 351 Mass. 53, 56 (1966). Restatement (Second) of Torts § 577. As to the first statement, Little and Ellis allege that Donahue told "them" at "Enoch's Garage" not to repair the car because the insurance claim was fraudulent, yet they provide no factual basis for the allegation of publication. The affidavits are silent as to whether the plaintiffs were at the garage, who may have heard Donahue's alleged statement or about when or in what circumstances it was uttered.

Even assuming the facts stated in the affidavits to be true, *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983), the affidavits must be based on personal knowledge and set forth specific facts which introduce a triable issue. Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). See *Great Barrington Sav. Bank* v. *Gens*, 8 Mass. App. Ct. 942, 943 (1979); *Lewis* v. *Antelman*, 10 Mass. App. Ct. 221, 225 (1980). *Botschafter* v. *Federal Deposit Ins. Corp.*, 33 Mass. App. Ct. 595, 596-597 (1992). The affidavits of Ellis and Little demonstrate neither plaintiffs' personal knowledge of nor specific facts establishing Donahue's publication of his statement to third parties. Therefore, the statement allegedly made at "Enoch's Garage" cannot survive a motion for summary judgment on a slander claim.

As to the second statement, Cohen attests that Donahue told him Ellis had committed fraud. Cohen's affidavit, made on personal knowledge and with the requisite specificity, is in compliance with Mass.R.Civ.P. 56(e) and establishes that Donahue published a statement to a third party, thereby satisfying the publication element of a slander claim.[8]

The subject statement, to be actionable, must also be "of and concerning" the plaintiffs. *Eyal* v. *Helen Bdcst. Corp.*, 411 Mass. 426, 429 (1991), and cases cited. In order to prove that the alleged statements were of and concerning them, the plaintiffs must show "either that the defendant intended . . . [his] words to refer to the plaintiff and that they were so

---

[8]We express no view on the question of whether the statements to Cohen may enjoy a qualified privilege, a matter not addressed by the parties.

understood, *or* that the defendant's words reasonably could be interpreted to refer to the plaintiff and that the defendant was negligent in publishing them in such a way that they could be so understood" (emphasis in original). *Id.* at 430, quoting from *New England Tractor-Trailer Training of Conn., Inc.* v. *Globe Newspaper Co.*, 395 Mass. 471, 483 (1985). Donahue's statement to Cohen on several occasions that "Dorothy Ellis was a phony and submitted a fraudulent claim" meets the first "of and concerning" test with respect to Ellis, i.e., Donahue intended to accuse Ellis, and Cohen understood Donahue to be accusing Ellis of a crime. Cohen's affidavit, however, makes no reference to Little or Goodnews, and both Little and Goodnews fail to demonstrate either that Donahue's statement was intended to refer to them or that Cohen understood Donahue's statement to refer to Little or Goodnews. In addition, there is no reasonable interpretation of the statement which permits the inference that Donahue was referring to Little or Goodnews. The second statement was accordingly not "of and concerning" them. Because Little and Goodnews do not meet the "of and concerning" test with respect to the second statement at issue, their slander claims fail. Ellis, however, has put forth evidence to establish that Donahue expressed to a third party a false and defamatory statement which pertained to her. The judge, accordingly, erred in granting summary judgment to defendants on Count IV as to Ellis, but correctly allowed the defendants' motion for summary judgment as to Goodnews and Little.

*Invasion of privacy.* The three plaintiffs allege in their complaint that both defendants invaded their privacy in violation of G. L. c. 214, § 1B, by "following them around Boston in an impermissibly intrusive and suggestive manner."[9] The right which the plaintiffs claim was infringed is their right to be left alone. To be actionable, the interference must be unreasonable and either substantial or serious. *Schlesinger* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 518-522 (1991).

Goodnews contends that Donahue "followed [him] around"

---

[9]General Laws c. 214, § 1B, as appearing in St. 1974, c. 193, § 1, provides in full: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

in a light blue Chevrolet. Little maintains that Donahue followed her extensively, made numerous telephone calls to her at home and at work, and sat in his automobile "in front of [her] home on numerous occasions." Ellis states that Donahue intimidated her by following her "on numerous occasions," and by asking her on the telephone, "How can you black people afford this type of expensive car?" While the defendants deny such contact occurred, material facts are plainly in dispute.[10] Whether the conduct complained of in the plaintiffs' affidavits is unreasonable, as well as either serious or substantial, is a matter to be resolved by the trier of fact. Accordingly, it was error to have allowed the defendants' motion for summary judgment on Count V.

*Breach of contract.* Ellis alleges that Safety breached its contract of insurance with her by failing to compensate her for her stolen vehicle. Safety contends that it was reasonable to deny Ellis's claim because Ellis failed to submit to an examination under oath, a condition precedent to her recovery.

According to the existing law at the time of this claim, coverage may be disclaimed when the failure of the insured to cooperate rises to the level of a "substantial and material" breach of that duty. *Darcy* v. *Hartford Ins. Co.*, 407 Mass. 481, 488 (1990).[11] The insured's failure to comply with a condition requiring an examination under oath constitutes so

---

[10]Goodnews states in his affidavit that an automobile followed him around and that "I believed the man to be Frank Donahue though I have never seen this individual." Little says of the person following her, "I believe this person to be Frank Donahue. . . ." Ellis states that "Frank Donahue . . . had an automobile, light blue Chevrolet . . . following my husband and I on numerous occasions." While the plaintiffs do not allege that they personally knew that Donahue was the person following them, they do state that they saw the same vehicle, with the same license plate number. Furthermore, Ellis and Little had met Donahue on various occasions, enabling them to identify the defendant. Drawing inferences most favorable to the plaintiffs, we conclude that the portions of their affidavits alleging that Donahue followed them establish triable issues of fact. *Hub Assocs., Inc.* v. *Goode*, 357 Mass. 449, 451 (1970). *Dattoli* v. *Hale Hosp.*, 400 Mass. 175, 178 (1987). We also note that while the defendants argue on appeal that pertinent portions of the affidavits are defective, they did not move to strike these portions below. *Stetson* v. *Board of Selectmen of Carlisle*, 369 Mass. 755, 763 (1976) ("[I]f a party does not move to strike the defective portion of an opponent's affidavit, in [her] discretion a judge may rely on the fact stated on belief").

[11]The court held in *Darcy* that "an insurer seeking to disclaim liability on the grounds of an insured's breach of a cooperation provision may do so

material and substantial breach of the insurance contract as a matter of law. *Cohen* v. *Commercial Casualty Ins. Co.*, 277 Mass. 460, 462 (1931). *Mello* v. *Hingham Mut. Fire Ins. Co.*, 421 Mass. 333, 337 (1995).

Ellis has not refuted Safety's verified contention that Ellis failed to submit to the examination under oath despite repeated requests and, therefore, failed to satisfy a condition precedent to recovery.[12] Nor has she alleged or evidenced any legal excuse which would absolve her of her duty to perform the condition. See, e.g., *Chase Precast Corp.* v. *John J. Paonessa Co.*, 409 Mass. 371, 373 (1991). See generally *Newcomb* v. *Brackett*, 16 Mass. 161, 166 (1819). Summary judgment for Safety as to Count I was therefore proper.

*Chapter 93A claim.* All three plaintiffs claim that Safety violated G. L. c. 93A, § 9(1), as amended through St. 1979, c. 406, § 1, which creates a private cause of action for "[a]ny person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two."[13] Section 2(*a*), as inserted by St. 1967, c. 813, § 1, provides that "[u]nfair or deceptive acts or

only upon making an affirmative showing of actual prejudice resulting from the breach." *Id.* at 491. Because *Darcy* changed existing law, the Supreme Judicial Court expressly limited its holding to claims arising after the date of that opinion. *Ibid.* Ellis's claim arose on September 26, 1989, which was before the decision in *Darcy*.

[12]The plaintiff's argument on this claim fails to rise to the level of appellate argument under Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). For this reason alone, we could consider the issue waived. *Hastoupis* v. *Gargas*, 9 Mass. App. Ct. 27, 39 (1980). *Commonwealth* v. *Whitford*, 16 Mass. App. Ct. 448, 452 (1983). *Struett* v. *Arlington Trust Co.*, 23 Mass. App. Ct. 152, 156 (1986). However, we need not do so where the claim so plainly fails on its merits.

[13]The defendant contends that Goodnews and Little do not have standing to bring a claim under G. L. c. 93A, § 9, because they are not consumers. This argument may have held true under the former version as appearing in St. 1979, c. 72, § 1: "Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive act or practice declared unlawful . . . may, as hereinafter provided, bring an action in the superior court. . . ." However, by deleting the language referring to purchasers and lessors in the later 1979 amendment, the Legislature "substantially broadened class of persons who could maintain actions" under the statute. *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675 (1983). See *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 190-191 & n.8 (1990) (plaintiff allowed to maintain

practices in the conduct of any trade or commerce are . . . declared unlawful."

The plaintiffs contend that Safety violated G. L c. 93A, § 2, during the course of Donahue's investigation. Racial harassment perpetrated during the course of an insurance claim investigation may well constitute an unfair business practice giving rise to a violation of G. L. c. 93A. G. L. c. 93A, § 2(*b*), inserted by St. 1967, c. 813, § 1, states that in construing § 2(*a*), we "will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45[a][1])." A business practice will be found unfair, and therefore unlawful, under G. L. c. 93A, § 2, or its Federal counterpart if it can be found to be immoral, unethical, oppressive, or unscrupulous; or within the bounds of some statutory, common-law or other established concept of unfairness. *Federal Trade Commn.* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972). *PMP Assocs., Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 595-596 (1975). *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 15 (1989). *Heller Financial* v. *Insurance Co. of North America*, 410 Mass. 400, 408 (1991). Racial harassment in the course of doing business is conduct fairly described as immoral, unethical, or oppressive for the purposes of G. L. c. 93A. See G. L. c. 12, §§ 11H & 11I (Massachusetts Civil Rights Act); *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 821-822 (1985); *Commonwealth* v. *Guilfoyle*, 402 Mass. 130, 134 (1988); *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, 473 n. 8 (1994). The plaintiffs have met the defendants' summary judgment motion with verified allegations of racially discriminatory words and deeds committed in the course of Safety's investigation of an insurance claim. They have thereby shown that a triable issue exists as

---

cause of action against defendant manufacturer even though neither a consumer nor in privity with defendant). See also *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. at 675 (plaintiff claimants against defendant insurer's insured entitled to maintain action against the defendant). Assuming, without deciding, that Goodnews and Little have been injured by unfair and deceptive acts committed by the defendant, we conclude that they (as well as the insurance policyholder, Ellis) have standing to bring a claim under the present version of G. L. c. 93A, § 9.

to whether Safety violated G. L. c. 93A.[14][15] It was error to allow the defendant's summary judgment motion on Count II.

*Civil rights violation.* The plaintiffs also allege that their civil rights were violated under G. L. c. 93, § 102, as inserted by St. 1989, c. 332, which provides in pertinent part:

> "(*a*) All persons within the commonwealth, regardless of sex, race, [or] color . . . shall have, except as is otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts. . . .

> . . . .

> "(*c*) A violation . . . is established if, based on the totality of circumstances, it is shown that any individual is denied any of the rights protected by [the foregoing]."

Only Ellis has standing to maintain a claim under this statute, since she alone entered into a contract with Safety. *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 70-71 (1992). Summary judgment was appropriately entered as to Goodnews and Little.

In view of its 1989 enactment, judicial gloss on the statute is as yet sparse. We may, however, look to 42 U.S.C. § 1981

---

[14]Safety argues that its refusal to pay Ellis's claim was legally permissible, precluding the plaintiffs from maintaining a claim under G. L. c. 93A. See *Guity* v. *Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 344 (1994) (no unfair settlement practice can be found where denial of coverage was reasonable). Such an argument presumes, however, that the plaintiffs' claim is premised solely on an unfair insurance settlement practice as defined under G. L. c. 176D, § 3(9). However, unlike *Guity, supra* at 344, where the cause of action was based on G. L. c. 93A and 176D, the claim here is based only on the provisions of G. L. c. 93A and is not confined to the acts proscribed by c. 176D, § 3(9), or to Safety's refusal to pay Ellis's claim.

[15]We note as well that the conduct complained of in Ellis's extant slander claim may be actionable under G. L. c. 93A. See *Dulgarian* v. *Stone*, 420 Mass. 843, 853 (1995) (a cause of action for defamation may give rise to a violation of G. L. c. 93A in the proper circumstances). Additionally, the conduct complained of in the three plaintiffs' extant invasion of privacy claims against Safety may also be actionable under G. L. c. 93A. See, e.g., *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 192 (1990) (personal injury); *Haddad* v. *Gonzalez,* 410 Mass. 855, 864-870 (1991) (intentional infliction of emotional distress).

(1995), prior to its amendment in 1991, for assistance. See *Butler* v. *RMS Technologies, Inc*, 741 F. Supp. 1008, 1012 (D. Mass. 1990). Under 42 U.S.C. § 1981, a cause of action may lie where an insurer "somehow impeded [the right of the insured] to enforce a contract in either the courts or [through] nonjudicial avenues." *Green* v. *State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994).

The defendants argue that Safety's refusal to pay an insurance settlement was not racial discrimination. While Safety's ultimate refusal to pay Ellis's insurance claim may have been supported by contract language, the record does not establish that the acts of racial harassment alleged to have occurred during the course of the investigation were unrelated to, and did not impede, Ellis's efforts to enforce the insurance contract. Notwithstanding the difficulties presented by appellants' barely adequate brief, our review of the record satisfies us that Ellis has raised disputed material facts sufficient to foreclose summary judgment on this issue. It was error to grant summary judgment to the defendants on Count VI as to Ellis.

To conclude, the judge's allowance of summary judgment against all plaintiffs on Count I (breach of contract) and Count III (intentional infliction of emotional harm) is affirmed. Summary judgment against all plaintiffs on Count II (G. L. c. 93A) and Count V (invasion of privacy) is reversed. Summary judgment against Little and Goodnews on Count IV (slander) and Count VI (G. L. c. 93, § 102) is affirmed. Summary judgment against Ellis on Counts IV and VI is reversed.

In sum, this case may proceed on Count II (G. L. c. 93A) as to all the plaintiffs, Count IV (slander) only as to Ellis, Count V (invasion of privacy) as to all the plaintiffs, and Count VI (G. L. c. 93, § 102) only as to Ellis. Summary judgment for the defendants on the remaining counts is affirmed.

The case is remanded for further proceedings consistent with this opinion.

*So ordered.*