Cratsley, John C., J.
These consolidated actions arise from articles published by the Boston Herald regarding the suicide of Brad Delp (“Brad”), the former lead singer of the band Boston. In the action that is the subject of this decision, Suffolk Civil Action No. 2010-4069, the plaintiff, Donald Thomas Scholz (“Scholz”), the founder of Boston, brought a claim for defamation against the defendant, Micki Delp (“Micki”), Brad’s ex-wife, with respect to statements in one Boston Herald article that are attributed to Micki (Count I).[5] The plaintiffs claim that these statements *173 indicate that Brad committed suicide because of turmoil in his professional life caused by Scholz. Now before this Court is Micki’s Supplemental Motion for Summary Judgment. For the reasons discussed below, the motion is ALLOWED.
FACTUAL BACKGROUND
Brad Delp committed suicide on March 9, 2007. On March 16, 2007, the Boston Herald’s Inside Track column published an article entitled: “Pal’s snub made Delp do it: Boston rocker’s ex-wife speaks; Delp’s ex says ‘No one can possibly understand.’ ” The article states, in relevant part:
Boston lead singer Brad Delp was driven to despair after his longtime friend Fran Cosmo was dropped from a summer tour, the last straw in a dysfunctional professional life that ultimately led to the sensitive frontman’s suicide, Delp’s ex-wife said.
“No one can possibly understand the pressure he was under,” said Micki Delp, the mother of Delp’s two kids, in an exclusive interview with the Track.
“Brad lived his life to please everyone else. He would go out of his way and hurt himself before he would hurt somebody else, and he was in such a predicament professionally that no matter what he did, a friend of his would be hurt. Rather than hurt anyone else, he would hurt himself. That’s just the kind of guy he was.”
Cosmo, who has been with Boston since the early ‘90s, had been “disinvited” from the planned summer tour, Micki Delp said, “which upset Brad.”
But according to Tom Scholz, the MIT-educated engineer who founded the band back in 1976, the decision to drop Cosmo was not final and Delp was not upset about the matter. (Cosmo’s son Anthony, however, was scratched from the tour.)
“The decision to rehearse without the Cosmos was a group decision,” Scholz said in a statement through his publicist. “Brad never expressed unhappiness with that decision ... and took an active part in arranging the vocals for five people, not seven.”
Nonetheless, according to the singer’s suicide notes released yesterday, Delp said he had “lost my desire to live.”
Police said Delp sealed himself inside his bathroom last Friday, lit two charcoal grills and committed suicide via carbon monoxide poisoning.
“Mr. Brad Delp. J’ai une ame solitaire. I am a lonely soul,” said one of the notes. “I take complete and sole responsibility for my present situation.” The note also included instructions on how to contact his fiancee, Pamela Sullivan, who found Delp’s body.
“Unfortunately she is totally unaware of what I have done,” the note said.
Yesterday Sullivan, who was planning to marry Delp this summer, said the situation was “extremely painful” for her, Delp’s children and his family.
“To the rest of the world, this is a big story,” she said. “But to Brad and Micki’s children and me, it’s very different.”
According to police reports released yesterday, Delp was found on the floor of his bathroom on Friday, his head on a pillow and a note paper-clipped to the neck of his shirt. He died sometime between 11:30 p.m. March 8 and the next afternoon.
Sullivan told police that Delp “had been depressed for some time, feeling emotional (and) bad about himself,” according to the reports.
According to Micki Delp, Brad was upset over the lingering bad feelings from the ugly breakup of the band Boston over 20 years ago. Delp continued to work with Scholz and Boston but also gigged with Barry Goudreau, Fran Sheehan and Sib Hashian, former members of the band who had a fierce falling out with Scholz in the early ‘80s.
As a result, he was constantly caught in the middle of the warring factions. The situation was complicated by the fact that Delp’s ex-wife, Micki, is the sister of Goudreau’s wife, Connie.
“Barry and Sib are family and the things that were said against them hurt,” Micki said. “Boston to Brad was a job, and he did what he was told to do. But it got to the point where he just couldn’t do it anymore.” . . .
PROCEDURAL BACKGROUND
On April 23, 2010, Micki filed a Motion for Summary Judgment (Docket #43). On September 21, 2010, Micki filed a Motion for Dismissal of Plaintiffs Complaint as a Sanction for his Willful Withholding and Whiting-Out of Highly Material Discovery that Establishes her Right to Summary Judgment (Docket #50). Micki also filed a Motion for Leave to File Supplemental Summary Judgment Papers, “(i]n the event that the Court does not dismiss Scholz’ complaint in its entirety” (Docket #53). On September 28, 2010, the parties filed a stipulation stating that Micki could file supplemental materials regarding her Motion for Summary Judgment and Scholz would have an opportunity to respond (Docket #51). Thereafter, Micki filed a Supplemental Motion for Summary Judgment and Scholz responded.
After discovering more new evidence, the parties submitted additional papers. Specifically, on March 1, 2011, Scholz submitted a Supplemental Summary Judgment Memorandum Concerning Recent Evidence (Docket #135). On March 24, 2011, Micki submitted a Memorandum in Further Support of her Motion for Summary Judgment (Docket #159) along with a Second Supplemental Statement of Undisputed Material Facts (Docket #160), an affidavit, and exhibits. On *174 April 11,2011, Scholz moved the court to strike Delp’s Second Supplemental Statement of Undisputed Material Facts or allow it time to respond (Docket #169). The court allowed Scholz time to respond and a Third Consolidated Statement of Facts concerning Micki Delp’s Motion for Summary Judgment was filed.
On May 13, 2011, Scholz indicated that he had obtained “significant evidence that establishes, without any doubt, the true reason why Brad Delp committed suicide.” On May 16, 2011, Scholz requested the court defer ruling on Micki’s Motion for Summary Judgment until Scholz could take the deposition of two “third-parly witnesses” concerning the “significant evidence.” The court allowed the motion and held a hearing on June 6, 2011 regarding whether it would consider additional evidence from the “third-pariy witnesses.” The parties filed memoranda regarding whether the court should consider the new testimony (Docket #s 192 and 195).
DISCUSSION
Summary judgment shall be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc, 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, drawing all permissible inferences in his or her favor. Douillard v. LMR, Inc., 433 Mass. 162, 163 (2001).
To withstand a motion for summary judgment for defamation, Scholz must demonstrate that (1) Micki made a false statement “of and concerning” Scholz to a third party; (2) the statement could damage Scholz’s reputation in the community; (3) Micki was at fault for making the statement;[6] and (4) the statement caused Scholz economic loss or is actionable without proof of economic loss.[7] Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003); Reilly v. Associated Press, 59 Mass.App.Ct. 764, 769 (2003).
Micki made the following statements to the Boston Herald:
(1) Shortly before his death, Brad was “upset” about his friend and bandmate, Fran Cosmo, being “dis-invited” from Boston’s tour;
(2) “Barry and Sib are family and the things that were said against them hurt” and “Boston to Brad was a job, and he did what he was told to do. But it got to the point where he just couldn’t do it anymore”;
(3) “No one can possibly understand the pressure [Brad] was under”;
(4) “Brad lived his life to please everyone else. He would go out of his way and hurt himself before he would hurt somebody else, and he was in such a predicament professionally that no matter what he did, a friend of his would be hurt. Rather than hurt anyone else, he would hurt himself. That’s just the kind of guy he was.”
(5) Brad was driven to despair after his longtime friend Fran Cosmo was dropped from a summer tour, the last straw in a dysfunctional professional life that ultimately led to the sensitive frontman’s suicide; and
(6) Brad was upset over the lingering bad feelings from the ugly breakup of the band Boston over 20 years ago.[8]
Micki moves for summary judgment on the grounds that these statements are (1) non-actionable opinions, (2) not “of and concerning” Scholz, (3) not defamatory, and (4) not published with actual malice.
A. Defamatory Connotation
The first question this Court addresses is whether the statements are reasonably susceptible of a defamatory meaning. Foley v. Lowell Sun Publishing Co., 404 Mass. 9, 11 (1989); Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 635 (1996). If the answer to this question is “yes,” then the ultimate issue of whether the article is defamatory is not for the court. Phelan v. May Dep’t. Stores Co., 443 Mass. 52, 56-57 (2004); see Jones v. Taibbi, 400 Mass. 786, 791-92 (1987) (“Where the communication is susceptible of both a defamatory and nondefamatory meaning, a question of fact exists for the jury”). If the answer is “no,” however, the defamation claim should be dismissed. Stanton v. Metro Corp., 438 F.3d 119, 125 (1st Cir. 2006).
The test to determine whether a writing is susceptible to defamatory meaning asks “whether, in the circumstances, the writing discredits the plaintiff in the minds of any considerable and respectable class of the community.” Brauer v. Globe Newspaper Co., 351 Mass. 53, 55 (1966) (internal quotations omitted); see Phelan, 443 Mass. at 56, quoting Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853 (1975) (“A false statement that ‘would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community,’ would be considered defamatory”); King v. Globe Newspaper Co., 400 Mass. 705, 718 *175 (1987) (inferences which might be drawn from a statement can make it actionable); Restatement (Second) of Torts §568 (1977). The court must interpret the statement reasonably and examine it “in its totality in the context in which it was uttered or published.” Foley, 404 Mass. at 11.
I find that none of the statements of Micki Delp are reasonably susceptible of a defamatory meaning. While the article as a whole could be read by some to contain a defamatory meaning as to Scholz because of the possible leap or inference a reader might make that turmoil in Brad’s professional life, possibly caused by Scholz, played a role in Brad’s suicide, none of the statements attributed to Micki make that connection, either explicitly or implicitly. While Micki’s statements speak to Brad’s “dysfunctional professional life,” including the exclusion of Fran Cosmo and the “ugly breakup of’ Boston, it is the Boston Herald writers who create the connection to Scholz and the possible implication that Scholz was responsible for the “dysfunction” and thus, Brad’s suicide. See Eyal v. Helen Bdcst. Corp., 411 Mass. 426, 433-34 (1991) (even though reports in other media sources may have focused on the corporation, “the broader and more intensive commentary done by others on the story cannot serve to make the [defendants’] statement capable of a defamatory meaning if the defendants’ words themselves have no application to the corporation”). For example, the Herald article quotes Micki as saying that Brad was upset that Fran Cosmo had been disinvited from the tour and then quotes Scholz who denied any unhappiness on Brad’s part because of the exclusion of Fran Cosmo. The Herald writers immediately follow Scholz’s quote with “[njonetheless,” suggesting a possible connection between Scholz and Brad’s suicide. And later in the Herald article, the writers state that Micki said that Brad was upset over the lingering bad feelings from the ugly breakup of Boston. The Herald writers, strictly on their own, explain that Brad continued to work with Scholz, but also worked with Barry Goodreau, Fran Sheehan, and Sib Hashian who had a fierce falling out with Scholz in the early ‘80s. Then the Herald writers add, again possibly seeking to create a connection between Scholz and Brad’s suicide, “(a]s a result, [Brad] was constantly caught in the middle of the warring factions.”
Thus, even assuming that the Boston Herald article actually discredited Scholz in the community, Micki’s statements themselves contain no defamatory content as to Scholz as a matter of law. See id. (“Whether a corporation’s standing in the community was actually diminished is not relevant if the [defendant’s statement] did not falsely charge the corporation itself with some kind of impropriety” (emphasis in original)).
While finding that Micki’s statements as reported are not reasonably susceptible of a defamatory meaning as to Scholz is sufficient to grant summary judgment for Micki, see Stanton, 438 F.3d at 125, this Court will address some of the other reasons why Scholz cannot survive summary judgment.
B. “Of and Concerning”
To be actionable, the statement of the defendant must be “of and concerning” the plaintiff. Ellis, 41 Mass.App.Ct. at 636, citing Eyal, 411 Mass. at 429. To show that a statement is “of and concerning” him, the plaintiff can show “either that the defendant intended its words to refer to the plaintiff and that they were so understood, or that the defendant’s words reasonably could be interpreted to refer to the plaintiff and that the defendant was negligent in publishing them in such a way that they could beso understood.” New England Tractor-Trader Training of Conn., Inc. v. Globe Newspaper Co., 395 Mass. 471, 483 (1985) (emphasis in original); Restatement (Second) of Torts §564 (1977) (“A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer”); Brown v. Hearst Corp., 54 F.3d 21, 25 (1st Cir. 1995) (“Defamation can occur by innuendo as well as by explicit assertion”).
Just as all six of Micki’s statements do not have defamatory content as to Scholz, I find that none of the statements are “of and concerning” Scholz. The statements of Micki do not refer to Scholz by name “or in such a manner as to be readily identifiable...” New England Tractor-Training of Conn., Inc., 395 Mass. at 480. Compare Driscoll v. Board of Trustees, 70 Mass.App.Ct. 285, 298 (2007) (statement was not “of and concerning” as plaintiff was not mentioned by name in article), with Reilly, 59 Mass.App.Ct. at 777 (statement was “of and concerning” plaintiff who was “only person identified in article”). As previously discussed, Micki’s six statements are about Brad and his mental state at the time of his suicide. The Herald writers, for whatever reason, added Scholz’s name and his quotes. So if there is any possibility that the article is “of and concerning” Scholz, it is the Herald writers’ doing.
In addition, also previously discussed, there is no reasonable interpretation of any of Micki’s statements which permits the inference that Micki was referring to Scholz. See Ellis, 41 Mass.App.Ct. at 637 (quotations and citation omitted) (“If the person is not referred to by name or in such a manner as to be readily identifiable from the descriptive matter in the publication, extrinsic facts must be alleged and proved showing that a third person other than the person libeled understood it to refer to him”). Rather, it is the article as a whole that allows for that possibility.
C. Actual Malice
Scholz concedes that he is a limited purpose public figure; thus, Scholz must show, by clear and convincing evidence, that Micki acted with actual malice, that is, that Micki made each statement with knowledge of its falsehood or with reckless disregard *176 for whether it was false. See New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964). To establish reckless disregard, the plaintiff must show “ ‘that the defendant in fact entertained serious doubts as to the truth of his publication,’ but proceeded to publish anyway.” Lane v. MPG Newspapers, 438 Mass. 476, 485 (2003), quoting St. Amant v. Thompson, 390 U.S. 727, 731 (1968); see Stone, 367 Mass. at 868 (standard is subjective so such doubts have to be in fact entertained by defendant although finding can be drawn from inference based on objective evidence).
I find the record does not reveal any realistic way in which Scholz can show that Micki knew statements 1,2,3, 4, or 6 were false or entertained serious doubts about their truth. Scholz has not identified specific evidence in the summary judgment record which raises a dispute as to whether Micki subjectively knew or seriously doubted the truth of statements 1, 2, 3, 4, and 6.
Statement 5 is the only statement which Micki could possibly have made falsely or with reckless disregard of the truth. It is the only statement containing causal language (“. . . the last straw . . . that ultimately led to . . . suicide”). Scholz has not submitted sufficient evidence at this stage, however, indicating that she actually did speak falsely or with reckless disregard for the truth. All of the evidence submitted by Scholz on this issue goes toward establishing Micki’s alleged hatred or dislike of Scholz. “In the context of defamation, [however,] the term ‘actual malice’ does not mean the defendant’s dislike of, hatred of, or ill will toward, the plaintiff.” Rotkiewicz v. Sadowsky, 431 Mass. 748, 752 (2000); see Restatement (Second) of Torts §580A comment d (“The presence of ill will or animus has no more effect than to assist in the drawing of an inference that the publisher knew that his statement was false or acted in reckless disregard of its falsity”). The absence of anything in the summary judgment record indicating that Micki actually lied or doubted the truth of statement 5 is telling. See id., at 755 (2000) (inquiry is subjective one as to defendant’s attitude toward truth or falsity of statement rather than defendant’s attitude toward plaintiff). Gail Parenteau’s affidavit about her conversations with Micki on March 14 and 15, 2007, while describing Micki’s anger and hostility toward Scholz, including her wish to link Brad’s suicide to his unhappiness with Scholz, does not reveal anything about the truthfulness of statement 5 to the Herald. Whether she spoke falsely to the Herald on March 15, 2007, in an intentional effort to blame Delp’s suicide on Scholz remains pure speculation. Furthermore, for reasons already given, Scholz has not overcome his burden of showing that statement 5 was reasonably susceptible of a defamatory meaning or of and concerning Scholz.[9]
ORDER
For the foregoing reasons, it is hereby ORDERED that Micki Delp’s Supplemental Motion for Summary Judgment is ALLOWED.

Scholz and The DTS Charitable Foundation, Inc. also brought a claim for tortious interference with advantageous relations against Micki (Count III). This claim was never fully briefed or argued, and the parties did not pursue discovery during the expanded period regarding any of the alleged conduct on which the claim is based. Thus, this Court deems the claim waived. In addition, the plaintiffs are not pressing their claim for civil conspiracy (Count IV) against Micki. Finally, the plaintiffs’ claims against Connie Goudreau (Counts I, III, and IV) and Jane Doe (Count II) have been dismissed.

The level of fault varies between negligence for statements concerning private persons and actual malice for statements concerning public figures. Jones v. Taibbi, 400 Mass. 786, 797 (1987).

There are four types of statements that are actionable without proof of economic loss: (1) statements that constitute libel; (2) statements that charge the plaintiff with a crime; (3) statements that allege that the plaintiff has certain diseases; and (4) statements that may prejudice the plaintiffs profession or business. Raunikar v. Bogojavlensky, 438 Mass. 627, 630 (2003).

Micki denies that she made the last two statements. For purposes of this summary judgment motion, however, the court, considering the facts in the light most favorable to Scholz as the non-moving party, assumes that Micki made the statements.

This Court does not need to address whether the statements are fact or opinion as it has granted summary judgment to Micki on three other grounds.