**Luis A. ACOSTA–VEGA, Plaintiff,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, et al., Defendants.**

**No. CIV. 94–1450 SEC.**

United States District Court,
D. Puerto Rico.

July 31, 1998.

4. Docket no. 7, exhibit 1.

María S. Kortright–Soler, San Juan, PR, Victoria A. Ferrer–Kerber, Hato Rey, PR, for Plaintiff.

Isabel Muñoz–Acosta, Assistant U.S. Attorney, U.S. Attorney's Office, District of Puerto Rico, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

This case is before the Court on defendants' motion for summary judgment (**Docket # 33**), and plaintiff's Rule 56(f) motion requesting a stay of the disposition of defendants' motion until further discovery has been provided (**Docket # 37**), both of which were duly opposed (**Dockets # 36, 38**). In their motion for summary judgment, defendants essentially argue that plaintiff's allegations fail to reach the necessary plateau for an actionable Title VII claim, thereby fashioning that this case is ripe for summary judgment. For the reasons stated below in this Opinion and Order, plaintiff's motion for a stay of disposition is **DENIED,** and defendant's motion for summary judgment is **GRANTED.**

**Factual Background**

The events which allegedly gave rise to the instant action began on June 9, 1985, when the Puerto Rico Department of Veterans' Affairs hired Luis Acosta–Vega as a GS–2/1 temporary File Clerk. On October 27, 1985, plaintiff was promoted to a permanent position as a GS–3/1 File Clerk. From that position, he was promoted on July 19, 1987 to a GS–4/1 Program Clerk; and subsequently, on April 8, 1990, he was promoted to the position of GS–5/2 Claims Clerk. It was at this point that the "winter of discontent" commenced for Mr. Acosta–Vega. However,

before we proceed any further, we believe it is necessary to provide a swift seminar on the process that all internal applicants for promotion follow at the Veterans Administration.

The first step requires applicants to obtain an appraisal from their supervisor. This appraisal system rates the applicant's knowledge, skills, abilities, and other characteristics ("KSAO's") for the specific position that the applicant is seeking. These KSAO appraisals have a numerical rating system beginning with 5 and ending with 0. A rating of 5 signifies that the applicant's "performance warrants special mention for placement consideration," while a 0 signifies that the supervisor is unable to rank the applicant in that particular category.

The next step requires a personnel officer to inquire as to whether or not the applicant has met the educational and yearly experience requirements for the position sought. If the applicant meets this requirement, then his name is forwarded to a rating panel.[1] This rating and ranking promotion panel consists of a Personnel Division Staff member and two subject matter experts who are cognizant of what skills the individual selected needs to possess.

This rating panel makes an "overall factor quality level determination" for each of the candidates that takes into consideration their education, experience, training, outside experience, and awards. Each of these factors is subsequently given a numerical value and a final rating number is generated for each applicant. The applicants are then rated numerically from highest to lowest as the panel ascertains whether or not a "meaningful break" is present at some point on the list.[2] The candidates that are above the break are termed "the best qualified for referral." If no break line exists, the six highest ranking candidates are placed on the best qualified list. This list is then passed on to the selecting official. The selecting official then has the right to select or not select a candidate from the "promotion certificate" provided to him by the promotion panel.

We will now summarize Mr. Acosta–Vega's attempts for promotion to different positions within the Veterans Administration. On May 5, 1990, Acosta–Vega applied for the position of Contact Representative; he was one of twenty-three applicants for this position. He received two 5 rankings and three 4 rankings on his supervisory appraisal. After receiving the applications and all other necessary information, the rating panel ranked the candidates for promotion. Plaintiff received a total of 15 points in this ranking; however, the meaningful break occurred at 18 points because there were eight candidates that ranked 18 or higher. Plaintiff did not, therefore, make the final "highly qualified list." The panel finally selected a Hispanic male for the position, and plaintiff did not appeal their decision to the Equal Employment Opportunity Commission.

Then on August 2, 1990, plaintiff applied for the position of Loan Specialist; he was one of sixteen candidates for the position. On his supervisory appraisal, he received two 5 rankings, one 4, one 3, and one 2. When the panel tallied the qualifications of the pool of applicants, plaintiff received a score of 10. This number once again left him off the "highly qualified list" because the meaningful break occurred at 13.5. The panel eventually selected a Hispanic female for the position, and once again Mr. Acosta–Vega failed to appeal that decision.

On November 29, 1990, plaintiff applied for the position of Fiduciary Account Clerk along with eight other applicants. He received a 5 in three factors and a 0 in one factor on his supervisory appraisal. In this case, no ratings panel was formed because only two of the nine applicants were seeking promotions. Therefore, a personnel officer was assigned the task of selecting the candidate for the

---

1. A rating panel is only convened when there are more than 5 qualified applicants for a position. If this is not the case, the names are provided directly to the selecting official in order of entry on duty date at the VA Regional Office.

2. The meaningful break is where (a) the lowest ranking candidate above the break should be able to perform the job with substantially equal success as all candidates with higher scores, and (b) the highest ranking candidate below the break should not be able to perform with substantially equal success as those above the break.

position. A Hispanic male was eventually selected for it, and plaintiff again failed to seek an appeal.

Next, on December 28, 1990, Mr. Acosta–Vega applied for the position of Fiduciary Account Examiner along with seven other people. His application was forwarded to the selecting official even though he failed to submit the required supervisory appraisal or supplemental qualification statement. In this instance, once again due to the limited number of applicants seeking promotion, no selecting panel was convened. A Hispanic female was finally selected for the position, and plaintiff did not appeal that decision.

On January 17, 1991, plaintiff applied for the position of Veterans Claims Examiner; he was one of seventeen applicants for the position. Mr. Acosta–Vega received a 5 in two factors, and a 3 in two factors on his supervisory appraisal. In this instance, the ratings panel determined the meaningful break to be 16.5, the exact number which plaintiff received. Therefore, Mr. Acosta–Vega made the list of "highly qualified candidates." Nevertheless, he was not one of the four candidates selected for the position by the selection panel. The panel selected four Hispanic males for the positions, but plaintiff failed to appeal this decision to the Equal Employment Opportunity Committee.

Then on February 14, 1991, Mr. Acosta–Vega applied for the position of Contact Representative along with twenty-five other candidates. He received ratings of 5 in three factors of his appraisal, and 4 in two factors. While plaintiff received a score of 17 by the ratings panel, the meaningful break occurred at 18. As a result, plaintiff failed to make the final list of "highly qualified candidates," and also did not appeal the decision when two Hispanic females were selected for the position.

On June 12, 1991, Mr. Acosta–Vega applied for the position of Supervisory Program Assistant along with nine other individuals. In his supervisory appraisal, plaintiff received 5 in three factors and a 4 in one factor. There were seven qualified candidates for the position, and no ratings panel was convened because less than five of the applicants sought a promotion. Subsequently, the selecting official chose a Hispanic male for the position.

Next, in August of 1991, plaintiff applied again for the position of Contact Representative; he was one of seventeen applicants. In his supervisory appraisal he received a 3 in all of the factors. When the panel determined the meaningful break to be at 19 points, eight applicants made the "highly qualified list." However, plaintiff was not one of the candidates because he received a total of 15 points. The panel selected a Hispanic female for the position; plaintiff did not appeal.

On September 12, 1991, Mr. Acosta–Vega applied for the position of Veterans Claims Examiner; he was one of eighteen candidates for the position. He received a 3 on three factors and a 5 in one factor of the supervisory appraisal. Since there was no meaningful break among the candidates, the 6 highest applicants' names were forwarded to the selecting officer. Plaintiff was one of these six highest ranking candidates; however he was not selected for the position. The selecting official selected a Hispanic male for the position. Plaintiff did not appeal.

Then on February of 1992, plaintiff again applied for the position of Veterans Claim Examiner, and since it was a continuous announcement for the same position, the same pool of applicants was used again. The eleven highest ranking applicants, including plaintiff, comprised the "highly qualified list", but this list was rescinded because no veterans preference points were allotted to those individuals who had earned them.[3] Therefore, the panel was forced to begin anew when the position was reopened in July of 1992. When this occurred, plaintiff received ratings of 3 in three factors and a 4 in another factor. When the panel calculated and ranked the applicants, plaintiff fell below the highly qualified level of 15 points since he had earned only 14. However, once again plaintiff failed to appeal this decision to the EEOC.

---

**3.** Pursuant to DVB Circular 20–83–12 of May 26, 1983, certain jobs within the Veteran's Department entitle candidates to "preference" due to their past military participation.

Next, on August 4, 1992, plaintiff applied for the position of Supervisory Program Assistant, along with three other individuals. In this instance Mr. Acosta–Vega failed to obtain a supervisory appraisal. Since there were only four applicants for the position, no ratings panel was formed. A Hispanic male was selected for the position, and plaintiff did not appeal.

Finally, on December 3, 1992, plaintiff applied for the position of Contact Representative; he was one of 24 applicants. Plaintiff was notified that he did not have the ranking to be referred for consideration by the selecting official. One male and one female were selected for the position.

On December 23, 1992, plaintiff visited an Equal Employment Opportunity counselor to notify his intent to file a complaint of discrimination based on race and sex and against the Veterans Administration. The counselor told plaintiff to go forward with his complaint, so plaintiff filed a formal complaint on February 4, 1993. The Department of Veterans Affairs, Office of the General Counsel, issued its decision on the matter on November 23, 1993. In its ruling, which found that no discrimination had taken place, the department concluded that "the complainant presented no substantive evidence of discrimination beyond [plaintiff's] bare allegations" (**Docket # 33, Exhibit XIV**). The report further stated that "just about everyone interviewed indicated that the blacks who are employed at the ... office are discriminated against. In no case[, however,] could anyone provide any factual evidence to support the allegations they were making." *Id.*

We feel it is important, for the purpose of this discussion, to clearly set forth plaintiffs accusations regarding the alleged discrimination he has suffered while employed at the Department of Veterans Affairs. Essentially, plaintiff argues that his supervisory evaluations and appraisals have been manipulated in order to disqualify him from promotion. He also argues that defendants have a practice or policy of discriminating against people based on their race as evidenced by the relatively small number of blacks who work at the agency in Puerto Rico. Furthermore,

Mr. Acosta–Vega alleges that the VA has taken reprisals against him for filing his complaint against the Equal Employment Opportunity Office.

Specifically, plaintiff claims that the officers at the VA manipulated the selection of candidates in order to preclude him from being selected; this includes moving the cutoff point at which candidates qualify to be considered for job opportunities and lowering his scores in order to accomplish the same. Finally, plaintiff claims that defendants have made it impossible for him to answer the summary judgment motion properly because they have refused to provide necessary information throughout discovery.

It is worth noting that since this complaint was filed on April 8, 1994, plaintiff has been promoted at least three times. On July 10, 1994, he was promoted to GS–7/3 Computer Assistant; on July 9, 1995, he was promoted to GS–8/3 Computer Assistant; and on July 7, 1996, he was promoted to GS–9/3 Computer Assistant.

With this factual background established, we will now proceed to the merits of the motions made by both Mr. Acosta–Vega and the Veterans Administration.

## Applicable Law/Analysis

### A. Rule 56(f) Motion

■ Rule 56(f) of the Federal Rules of Civil Procedure is meant as "an additional safeguard against an improvident or premature grant of summary judgment ..." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2740 (1983). The rule states that:

[s]hould it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In order to succeed on a Rule 56(f) motion, the movant must "(1) articulate a plausible basis for the belief that discoverable materi-

als exist which would raise a trial worthy issue, and (2) 'demonstrate good cause for failure to have conducted the discovery earlier'." *Price v. General Motors Corporation,* 931 F.2d 162, 163 (1st Cir.1991)(quoting *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 988 (1st Cir.1988)).

In the present matter, plaintiff avers that he has been unable to sufficiently conduct discovery due to defendants' actions, which have continuously impaired Mr. Acosta–Vega's efforts to conclude discovery. Specifically, plaintiff claims that defendants have failed to provide pertinent information vital to his claim, and defendants' counsel has consistently canceled meetings staged in order to discuss their differences. Before we proceed with the merits of this 56(f) motion, however, we believe that a detailed procedural history of this case should be set forth.

Plaintiff filed the instant complaint on April 8, 1994. On August 5, 1994, defendants filed a motion to dismiss. On September 19, 1994, plaintiff submitted the first set of interrogatories to defendants. On October 5, 1994, we granted defendants' request for a stay of discovery, pending the resolution of their motion to dismiss. On September 29, 1995, the instant case was finally dismissed. Plaintiff filed a notice of appeal on June 13, 1996 and this case was remanded on December 30, 1996.

Once remanded, the parties held a Rule 311.11 meeting on April 11, 1997. On April 23, 1997, defendants answered plaintiff's first set of interrogatories. On May 12, 1997, a settlement conference was held before this court. At that time, the government notified plaintiff that it would file a summary judgment motion in the near future. On June 27, 1997, defendants filed the instant motion for summary judgment, and on July 7, 1997, plaintiff opposed it and filed his Rule 56(f) motion. As of July 31, 1998, no further activity has been recorded in this case.

With the procedural history recorded, we will now address the merits of plaintiff's Rule 56(f) motion by first noting its procedural shortcomings. Rule 56(f) says that the plaintiff must by affidavit state the reasons why he is unable to present the necessary opposing material. Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *supra,* at 183. Plaintiff Acosta–Vega, while seeking relief pursuant to Rule 56(f), has failed to follow these procedural guidelines because no affidavits have been submitted to this Court as specifically called for by Rule 56(f). Some Courts have nonetheless ruled that continuances could be proper even though the rule was not strictly followed if the Court believed that the party opposing summary judgment had been diligent and acted in good faith. *See Paterson–Leitch v. Massachusetts Municipal Wholesale Elec.,* 840 F.2d 985, 988 (1st Cir.1988). Based on the foregoing, we will not deem plaintiff's deviation from the rule fatal. Ultimately, however, our ruling will be influenced by whether plaintiff acted diligently and in good faith.

■ We will now discuss the first prong of the Rule 56(f) test: whether the information sought will lead to a trial worthy issue. The crux of plaintiff's argument is that defendants have withheld information concerning the race and color of their employees, supervisors, and selecting officials at the Veterans Administration in Puerto Rico. Mr. Acosta–Vega, in his Rule 56(f) motion, states that these discovery requests go to the heart of the matter, and that such information is necessary in order to support his statement that in all but one occasion non-black persons were selected for the positions. The Department of Veterans Affairs does not, however, classify employees by race and color pursuant to 29 C.F.R. § 1614.601. The specific race and color statistical information sought by plaintiff was therefore, not provided only because that particular data is not kept.

■ Furthermore, with regards to the sexual discrimination claim, the Veterans Administration provided plaintiff with the information he requested concerning the sex of the selecting official and the candidate selected for the position. Additionally, defendant provided the sex and national origin of the candidates selected for the positions plaintiff sought in their statement of uncontested facts accompanying the motion for summary judgment. This gender specific information was readily accessible since the VA is re-

quired to maintain this statistical data pursuant to 29 C.F.R. § 1614.601.

While this Court believes that this information, if available, may have possibly given rise to an issue that is truly trial worthy, we are convinced that plaintiff has been less than diligent throughout the discovery process and has thus, failed to comply with the second prong of the Rule 56(f) test. When addressing this second prong of a Rule 56(f) motion, the First Circuit has consistently held that Rule 56(f) "is designed to minister to the vigilant, not to those who slumber upon perceptible rights." *Ayala–Gerena v. Bristol Myers–Squibb Company*, 95 F.3d 86, 92, (1st Cir.1996)(*quoting Resolution Trust Corp. v. North Bridge Assoc., Inc.*, 22 F.3d 1198, 1203 (1st Cir.1994)).

If we focus on the particular discovery information requested by plaintiff throughout the litigation and up to this date, we cannot help but notice that the only discovery which he has attempted to conduct is the submission of a first set of interrogatories on September 19, 1994. Defendants complied with this request, and answered the interrogatories on April 23, 1997, after the case was remanded to this Court. Plaintiff has nevertheless, decided to rely instead on his subjective accusations and conclusions in order for us to infer some discriminatory animus on the part of the Veterans Administration. We believe that in the nineteen months since this case was remanded, independent of plaintiff's claims of several failed 311.11 meetings canceled by defendant's attorney, surely plaintiff could and should have attempted further discovery either on his own or through a motion to compel discovery. Since he failed to do so, we believe he also failed to comply with the requirements of Rule 56(f).

For the reasons stated above, plaintiff's Rule 56(f) motion shall be **DENIED**. We will now consider defendant's motion for summary judgment on the merits.

## B. Summary Judgment Standard

As noted by the First Circuit Court of Appeals,

[s]ummary judgment has a special niche in civil litigation. Its role is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources.

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

According to Fed.R.Civ.P. 56(c), a summary judgment motion should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). It is not enough to conjure up an alleged factual dispute between the parties; to defeat summary judgment, there must exist a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As stated by the First Circuit, "a party contesting summary judgment must offer the court more than posturing and conclusory rhetoric." *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir.1995). Furthermore, "[t]his principle is brought into bold relief when the motion targets an issue on which the nonmoving party bears the ultimate burden of proof. In that circumstance, the nonmovant must 'produce specific facts, in suitable evidentiary form,' in order to demonstrate the presence of a trial worthy issue and thereby deflect the sharp blade of the summary judgment ax." *Id., quoting Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994).

For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992). *See also Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.

1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris*, 27 F.3d at 748. Moreover, "genuineness and materiality are not infinitely elastic euphemisms that may be stretched to fit whatever pererrations catch a litigant's fancy." *Lawton v. State Mutual Life Assurance Company of America*, 101 F.3d 218, 223 (1st Cir. 1996), *quoting Blackie v. State of Maine*, 75 F.3d 716, 721 (1st Cir.1996).

In determining whether to grant summary judgment, the Court may not, however, weigh the evidence. *Casas Office Machines v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id., citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

## C. Section 1981 Claim

The First Circuit has held that "[i]n order to prevail under Section 1981, a plaintiff must prove purposeful employment discrimination ... [T]he ultimate issue is whether the defendant intentionally discriminated against the plaintiff, under the by-now familiar analytical framework used in disparate treatment cases under Title VII." *Ayala–Gerena*, 95 F.3d at 95, *citing Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989). Without any direct evidence of discrimination, Title VII parties follow the burden shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973).

Under this burden shifting framework, we must always be cognizant of the fact that it is only the burden production that shifts; the burden of persuasion always remains with the plaintiff. *Udo v. Tomes*, 54 F.3d 9, 12 (1st Cir.1995). Initially, under the *McDon-*

*nell Douglas* framework, it is up to the plaintiff to establish a prima facie case of discrimination by showing that "(i) plaintiff is a member of the protected class; (ii) [that he] performed his ... job satisfactorily; (iii) that plaintiff was discharged [or not promoted] and; (iv) [that] the position ... was eventually filled by someone with plaintiff's qualifications." *Ayala–Gerena*, 95 F.3d at 95.

■ In this case, we believe that plaintiff has established a prima facie case of race/sex discrimination pursuant to the aforementioned requirements. First of all, plaintiff is a black (Hispanic) male, which makes him a member of the protected class. Next, based on plaintiff's periodic promotions and favorable evaluations, we assume that he performed his job satisfactorily. Also, it is undisputed that plaintiff did not receive the promotions for which he applied, and finally, that the positions sought by plaintiff were filled by candidates with similar qualifications those of plaintiff. Based on these requirements, we believe that Mr. Acosta–Vega has established a prima facie showing of discrimination.

That being the case, "the burden of production [now] shifts to defendant ... to show a legitimate, nondiscriminatory reason for plaintiff's [non-promotion]." *Id.* The Court finds that defendant has met this burden of producing a valid non-discriminatory justification in the selection process. Defendant's detailed analysis of the selection process, combined with their strict adherence to the regulations and thorough documentation of the promotion process, impresses the Court as a valid and objective system. We feel that these exhibits demonstrate that the process used by the Veterans Administration was in accordance with their regulations. More importantly, however, after carefully reviewing the records of the numerous positions to which Mr. Acosta–Vega applied, we believe that the Veterans Administration's claim that the candidates selected were better qualified, and that no manipulation of the cut-off points occurred, clearly satisfies their burden of producing a legitimate non-discriminatory reason for plaintiff's non-promotion.

Since plaintiff has articulated "a legitimate nondiscriminatory basis for its adverse employment decision, the plaintiff must [now] offer direct or indirect evidence sufficient to show that the employer's decision ... was wrongfully based on color or sex." *Id.* at 95. For the following reasons, we believe that this is where plaintiff's claim fails. Quite simply, plaintiff throws unfounded allegation upon unfounded allegation in an attempt to demonstrate discrimination. However, what plaintiff fails to provide is any proof or evidence supporting his allegation. For instance, Mr. Acosta–Vega claims that the VA offered him a promotion if he dropped his claim against the VA, but he fails to provide any evidence in support of this accusation. Similarly, plaintiff relies on mere accusations in order to provide a discriminatory animus. Time after time he states that selecting officials have manipulated the selection process in order to deter any chance he might have at promotion. He has not, however, convinced this Court that any of these accusations are backed by direct or indirect evidence.

Last, but not least, Mr. Acosta–Vega relies on accusations by other workers at the DVA, produced during the EEOC's internal investigation, in an attempt to paint a picture of discrimination throughout the department. But once again, these mere conclusory statements fall short of the requirement. For instance, plaintiff alleges that Dennis Platt, a co-worker, "has personal knowledge and has also suffered ... discrimination due to being black." He further contends that Juan Alberdston, another co-worker, has stated that "there are no opportunities for black employees in the VA, and [that] he has been treated differently from non-black employees and has not been trained properly." Finally, plaintiff claims that Armand Martinez, a black employee, has also confirmed that "there is discrimination against black employees in Puerto Rico." No examples, however, are ever proffered in support of these allegations. As the First Circuit has noted on numerous occasions, "[r]esting on conclusory allegations, improbable inferences and unsupported speculation does not suffice" to defeat summary judgment. *Id.* at 97, *citing*

*Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993).

## Conclusion

For the foregoing reasons plaintiff's Rule 56(f) motion (**Docket # 37**) is **DENIED,** and defendant's motion for summary judgment (**Docket # 33**) is **GRANTED.** Judgment will be entered accordingly.

**SO ORDERED.**