Fecteau, J.
Kimberly Bartheimes and Karin Lamagdaliene (collectively the “plaintiffs”) brought this action against their former co-worker, Paula Mar-tineau and former employer, Olympus Health Care Group, Inc. after being discharged for allegedly failing to comply with Olympus’ anti-harassment policy. In substance, the plaintiffs allege that Martineau made false statements about them to her supervisors that caused the termination of their employment and defamed them. The plaintiffs’ amended complaint seeks relief on the grounds of intentional infliction of emotional distress, defamation, negligent failure to investigate, and defamation — respondeat superior.[3] The defendants now move for summary judgment pursuant to Mass.R.Civ.P. 56(c).
Also pending before the court is the plaintiffs’ Motion to Extend the Tracking Order pursuant to Super. Ct. Standing Order 1-88(D).[4] Because both motions are based upon the same factual underpinnings, in the interests of judicial economy this court considers them together.
For the reasons set forth below, the plaintiffs’ motion is DENIED and the defendants’ motion is ALLOWED.
BACKGROUND
The undisputed material facts, as established by the summary judgment record, are set forth below.
In April 1996, Olympus hired Kimberly Bartheimes (Bartheimes) and Karin Lamagdaliene (Lamagdaliene); both were employees-at-will and both received training regarding, and a copy of, Olympus’ anti-harassment and anti-discrimination policy. As acknowledged by both the plaintiffs, Olympus’ policy required all employees who believed that they were either a victim of, or a witness to, sexual harassment to report such alleged indiscretions to a supervisor.[5] At some point the plaintiffs began working with the defendant Paula Martineau (Martineau) at Olympus’ Clark Manor facility.
In March 1997, Bartheimes became Clinical Supervisor of Lamagdaliene and Holly Anne Peck (Peck), an occupational therapist and Team Leader of the Clark Manor facility. Linda Rahm (Rahm), Regional Director for Olympus, was Bartheimes’ immediate supervisor, and had ultimate responsibility for employee issues involving the plaintiffs and the defendant, Martineau.
On August 10, 1998, Peck telephoned Linda Rahm. Peck indicated that she had received a phone call from Martineau who reported that she overheard, and was upset by, a conversation between the plaintiffs and Peck discussing Martineau’s sexual orientation.[6] Peck also indicated that Martineau planned on registering a complaint about the matter with Rahm. In response, Rahm immediately contacted Bartheimes to verify Martineau’s concerns. Bartheimes admitted discussing Martineau’s sexuality, but reported that her inquiry was motivated by interest and curiosity rather than malevolence.[7]
On August 11, 1998, Martineau telephoned Rahm to further discuss her concerns regarding the plaintiffs’ conversation about her sexuality. Three days later, on August 14, 1998, Rahm met with Mar-tineau who complained about additional comments and alleged gossip by both the plaintiffs regarding homosexuality. Martineau reported that she felt unsafe, unprotected, and uncomfortable in the workplace, and that she thought that Bartheimes was “prejudiced and mean.”[8]
*618 Rahm suspended both plaintiffs pending the outcome of an investigation.
As part of her investigation, Rahm also interviewed Lamagdaliene, who also admitted discussing Martineau’s sexual orientation, and other Olympus employees.[9] On August 18, 1998, eight days after first learning of Martineau’s complaint, after reviewing her investigation with the Vice President of Human Resources for Olympus and legal counsel, Rahm terminated both plaintiffs for allegedly violating Olympus’ anti-harassment policy.[10]
This action followed.
Because the procedural posture of this case impacts the decision reached here, this court deems it prudent to set forth the relevant chronological events occurring subsequent to the filing of the complaint.
October 22, 1998 the plaintiffs filed a four-count complaint against Martineau and Olympus seeking relief for violations of the Massachusetts Constitution (Count I), intentional or negligent infliction of emotional distress (Count II), defamation (Count III) and wrongful termination (Count IV)
April 27, 1999 the court allowed the defendant’s motion to dismiss Counts I, IV and n as to Olympus
August 18, 1999 the tracking order discovery deadline; all discovery to be completed by this time.
September 22, 1999 the court allowed, without opposition, the defendants’ motion to extend time to file motion for summary judgment
October 7, 1999 the plaintiffs filed a motion to amend their complaint to add Counts V and VI respectively alleging negligent supervision and defamation respondeat superior against Olympus, and on October 12, 1999, the court allowed, without opposition, the plaintiffs motion
November 3, 1999 the plaintiffs file three discovery requests upon the defendants; these are the plaintiffs’ first attempt at discovery: the first request sought documents from Olympus. The remaining two requests sought documents and answers to interrogatories from Martineau. The defendants have refused to respond.
November 16, 1999 the defendants filed the instant motion for summary judgment
November 30, 1999 three months after the expiration of the tracking order discovery deadline, the plaintiffs file a motion to extend the discovery deadline. No opposition having been filed, on December 3, 1999 this court converted the plaintiffs’ motion into a motion for additional time to conduct discovery pursuant to Mass.R.Civ.P. 56(f).
With the procedural history recorded, this court now addresses the plaintiffs’ (converted) Rule 56(f) motion. Briefly, the plaintiffs move for an order continuing consideration of the defendants’ motion for summary judgment until completion of discovery relating to their claims that Olympus negligently investigated Martineau’s claims (Count V), and defamed them (Count VI). In particular, the plaintiffs seek discovery directed at uncovering evidence from both Martineau and Olympus concerning, in relevant part, Martineau’s alleged complaint filed with Olympus.
As alluded to above, but discussed below, the plaintiffs’ motion is denied.
DISCUSSION
I. The Rule 56(f) Paradigm
When a party, as here, “claims an inability to respond to an opponent’s summary judgment motion because of incomplete discovery, [Mass.R.Civ.P. 56(f)] looms large.” Resolution Trust Corp. v. North Bridge Assoc. Inc., 22 F.3d 1198, 1202 (1st Cir. 1994) (discussing federal counterpart Fed.R.Civ.P. 56(f)).[11] Rule 56(f) is a “procedural escape hatch,” Argentieri v. Fisher Landscapes, Inc., 15 F.Supp.2d 55, 60 (D.Mass. 1998) (citations omitted), that describes “a method of buying time for a party who, when confronted by a summary judgment motion, can demonstrate an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition.” Resolution Trust Corp., supra at 1203. The rule is “intended to safeguard against judges swinging the summary judgment axe too hastily.” Id.
In order to succeed on, and benefit from a Rule 56(f) motion, the movant must, as a general matter, articulate by affidavit[12] a plausible basis for the belief that discoverable materials probably exist which would influence the outcome of the pending summary judgment motion, see First Nat’l Bank of Boston v. Slade, 379 Mass. 243, 244-45 (1979), and demonstrate that it was diligent in pursuing discovery before the summary judgment initiative surfaced. Resolution Trust Corp., supra at 1203. Or, put another way, the movant must show that there is “good cause for [its] failure to have conducted the discovery earlier.” C.B. Trucking, Inc. v. Waste Management, Inc., 137 F.3d 41, 44 (1st Cir. 1998). Rule 56(f) does not extend to litigants “who act lackidasically;. .. [it] is designed to minister to the vigilant, not those who slumber upon perceptible rights .’’Resolution Trust Corp., supra at 1203.
As reasons for continuing the defendants’ motion for summary judgment, the plaintiffs contend that they need additional time to complete discovery because Olympus has recently been added as a party defendant. This court is thus left to evaluate the potential significance of the plaintiffs’ as yet unanswered discovery requests. According to at least one court, this is “something of a metaphysical exercise.” Id. at 1207. Nonetheless, this court is not estopped from postulating even the most flattering of responses. See Mowbray v. Waste Management Holdings, Inc., 45 F.Supp.2d 132, 142 (D.Mass. 1999) (Young, C.J.) (assuming proposed discovery requests answered in a light most favorable to the moving party, but finding *619 such answers unhelpful and thus denying rule 56(f) motion).
With the above rubric in mind, this court finds the plaintiffs’ motion is unpersuasive. First, two of the plaintiffs’ three discovery requests are addressed to the defendant Martineau who has, since the inception of this action, been a party defendant and available for discovery. This court would be hard-pressed to conclude that the record supports a finding that the plaintiffs exercised due diligence or were otherwise “vigilant” before the defendants moved for summary judgment, at least with respect to Martineau.
This court finds that since there is no evidence that in the more than thirteen months between the filing of their complaint and the instant request to extend the discovery deadline, the plaintiffs had ever attempted any form of discovery, their demands are ineffective and are thus properly disregarded. See Sup. Ct. Standing Order 1-88(E) (“Documents filed outside the established time limitations without [a written waiver or modification of scheduling order] shall have no binding effect on the Court or the parties, even if filed by agreement between the parties"). See also Massachusetts School of Law at Andover, Inc. v. American Bar Assoc., 142 F.3d 26, 45 (1998) (affirming denial of plaintiffs rule 56(f) motion given plaintiffs “lethargic approach to discovery”); C.B. Trucking, Inc. v. Waste Management, Inc., 137 F.3d at 45 (finding where plaintiff not diligent in pursuing discovery, rule 56(f) motion “unjustified”); Acosta-Vega v. Brown, 14 F.Supp.2d 177, 183 (D.Puerto Rico 1998) (same); Avala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 92 (1st Cir. 1996) (same).
The plaintiffs’ motion, to the extent it seeks discovery from Martineau, is therefore denied.
Second, the remaining discovery request, addressed to Olympus, although also seemingly untimely, appears to be justified given the defendant’s failure to oppose plaintiffs’ motion to amend their complaint in September 1999, which motion effectively re-joined Olympus as a party defendant. Nonetheless, even assuming the requested discovery materials bear the most voluptuous fruit, such information would not be “capable of breathing life into [the plaintiffs’ remaining] claims.” Mowbray v. Waste Management Holdings, Inc., 45 F.Supp.2d at 142 (denying defendant’s rule 56(f) motion), quoting Resolution Trust Corp., supra at 1207.
Quite simply, any information or documentation retrieved as a result of the plaintiffs’ delayed discovery request would not shield dismissal of Counts V and VI against Olympus. See Commonwealth v. Fall River-Motor Sales, Inc., 409 Mass. 302, 309 (1991) (finding trial court has discretion in determining whether any relief is to be granted under Rule 56(f), and may properly deny a continuance where further discovery would not be helpful to oppose the summary judgment motion). See also infra. and Bratt v. International Bus. Mach. Corp., 392 Mass. 508, 509 (1984) (finding employer has conditional privilege to disclose defamatory information concerning an employee if not excessive or reckless and the publication is reasonably necessary to serve the employer’s legitimate interest in the fitness of an employee to perform his or her job). See also O’Connell v. Bank of Boston, 37 Mass.App.Ct. 416 (1994), rev, denied 419 Mass. 1104 (1995) (affirming directed verdict for defendant on negligent investigation claim and finding duty runs to party initiating investigation not employee investigated). Accord Fredette v. Respite House of Fitchburg, Civil Action No. 90-3105, 95 WL 809520 at 2-3 (Mass.Super. 1995), [3 Mass. L. Rptr. 664] (citing with approval O'Connell, and awarding summary judgment in favor of defendant); Vaughn v. XRE/ADC Corp., Civil Action No. 95-6187, 1996 WL 1185094 at 2 (Mass. Super. 1996) [7 Mass. L. Rptr. 664] (finding negligent investigation barred by c. 152, §24 of Workers’ Compensation Act).
The plaintiffs’ motion with respect to the defendant Olympus is also likewise denied.
II. The Merits of the Defendants’ Motion for Summary Judgment
A. Standard of Review
The function of summary judgment is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Supp.2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). The criteria are familiar: this court grants summary judgment where there are no genuine issues of material fact, and if, viewing the entire record in a light most flattering to the nonmovant, the proponent demonstrates its entitlement to judgment as a matter of law. Cassesso v. Comm’ r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). This may be done, inter alia, by showing an absence of evidence to support the plaintiffs’ position. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the defendants have carried this burden, the onus shifts to the plaintiffs. “In order to survive the swing of the summary judgment axe,” Mack v. Great Atlantic and Pacific Tea Co, Inc., 871 F.2d 179, 181 (1st Cir. 1989), the plaintiffs must produce evidence on which a reasonable finder of fact could base a verdict for them. See McKenzie v. Brigham & Women’s Hosp., 405 Mass. 432, 437-38 (1989); Michaelson v. Digital Financial Servs., 167 F.3d 715, 720 (1st Cir. 1999) (same). If the plaintiffs cannot produce such evidence, the motion must be granted. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). They cannot “rest on the mere allegations or denials of their pleading.” Baker v. Monga, 32 Mass.App.Ct. 450, 453 (1992).
The defendants argue that all remaining counts against them should be dismissed as there are no genuine disputes of material fact, and because the *620 plaintiffs are unable to evidence any actionable conduct as a matter of law. Based on this court’s independent review of the summary judgment record and the controlling and applicable legal precedent, the defendants’ motion is allowed. The court now discusses each remaining count in turn.
B. Application
1. Count II — Intentional Infliction of Emotional Distress
In Count II of their complaint, the plaintiffs allege that by reporting her concerns of the plaintiffs’ conversation regarding her sexuality, Martineau intentionally inflicted upon them emotional distress. The defendants argue that this claim is, in substance, a claim for “personal injuries” within the meaning of the Worker’s Compensation Act, G.L.c. 152, §24, and is thus barred.
Section 24 provides in pertinent part that “an employee . . . waives his right of action at common law ..., in respect to an injury that is compensable under this [Worker’s Compensation Act], to recover for personal injuries." (emphasis added). Personal injuries are defined in the Act to include “mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occurring within any employment.” G.L.c. 152, §1(7A). Furthermore, the legislature subsequently clarified §1(7A) to read, “no mental or emotional disability rising out of a bona fide, personnel action, including . . . termination, except such action which is the intentional infliction of emotional harm, shall be deemed to be a personal injury within the meaning of this chapter.” G.L.c. 152, §1 (7A), as amended by St. 1985, c. 572, §68.
Here, it is uncontroverted that Count II seeks damages for the intentional infliction of “mental harm” that arose out of a “bona fide personnel action,” to wit, their termination of employment with Olympus. Based on the foregoing, this court finds that Count II falls squarely under the statutory definition of “personal injuries” and is thus precluded by the Act. G.L.c. 152, §24. This result is consistent with such cases as Fusaro v. Blakely, 40 Mass.App.Ct. 120, 123 (1996) (vacating verdict for plaintiff, dismissing claim for intentional infliction of emotional distress claim, and finding “claim[ ] against a fellow employee for the commission of an intentional tort will be barred by the Worker’s Compensation Act, G.L.c. 152, §24, if committed within the course of the worker’s employment and in furtherance of the employer’s interests”); Seeley v. Prime Computer, Inc., 1990 Mass.App.Div. 132 (1990) (claims for intentional infliction of emotional distress are personal injuries and barred by §24); Anzalone v. Massachusetts Bay Transpo. Authy., 403 Mass. 119, 122-25 (1988) (conduct occurred within scope of employment and thus barred by §24), Foley v. Polaroid Corp., 381 Mass. 545, 550 (1980) (same), and Vaughn v. XRE/ADC Corp., 1996 WL 1185094 at *2 (same).
Moreover, in order to prevail under a common law theory of intentional infliction of emotional distress, the plaintiffs must show that the conduct was “extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.” Agis, v. Howard Johnson Co., 371 Mass. 140, 145 (1976). This court finds as amatter oflaw that the conduct alleged does not rise to the level required to the level of outrageousness.
The defendants’ motion for summary judgment on Count n of the plaintiffs’ complaint is hereby AL- ■ LOWED.
2. Counts fll and VI — Defamation & Defamation Respondeat Superior
The plaintiffs next claim that the defendants defamed them by allegedly accusing them of sexual harassment.
a. Martineau Defamation
To prove an action of slanderous defamation against Martineau, the plaintiffs must demonstrate that she, without a privilege to do so, intentionally or negligently published to a third person, a false and defamatory statement of fact by spoken words of and concerning the plaintiffs that results in harm to the plaintiffs. Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 635 (1996); Correllas v. Viveiros, 410 Mass. 314, 319 (1991). See generally Restatement (Second) Torts §§558, 565, 566 (1977 Ed.). A statement is defamatory if it is “reasonably susceptible of a defamatory meaning,” id. at 635-36, and “holds the plaintiffs to ridicule, scorn or contempt in a considerable and respectable class of the community.” Zereski v. American Postal Workers Union, Civil Action No.97-1567, 9 Mass. L. Rptr. 284, 1998 WL 1181769, at *4 (Mass. Super. 1998), citing Muchnik v. Post Publishing Co., 332 Mass. 304, 306 (1955). The cause of action for defamation, however, provides no redress for “epithets, rhetorical hyperbole, or pure statements of opinion." Lyons v. Globe Newspaper Co., 415 Mass. 258, 266-67 (1993); Pritsker v. Brudnoy, 389 Mass. 776, 778 (1983).
With the above in mind, this court must thus, as a threshold matter, decide whether Martineau’s statement that Barthelmes was “prejudiced and mean,” is reasonably susceptible of a defamatory meaning, Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 635 (1996), or is nothing more than “epithets, rhetorical hyperbole, or pure statement of opinion." Lyons, supra at 266-67. This determination is a question of law for the court, Foley v. Lowell Sun Pub. Co., 404 Mass. 9, 11 (1989), and “requires that the court examine the statement in its totality in the context in which it was uttered or published.” Id., quoting Myers v. Boston Magazine Co., 380 Mass. 336, 341-42 (1980).
In support of their claim, and in opposition to the instant motion, the plaintiffs have each submitted *621 affidavits testifying that “upon information and belief, . . . Martineau alleged to at least two employees, Linda Rahm and Holly Ann Peck, that I sexually harassed her. Martineau filed a claim, and discussed the matter with other employees . . . , this publication defamed me.”[13] Even taking the facts stated in the affidavits as true, supporting affidavits must be “based on personal knowledge and set forth specific facts which introduce a triable issue.” Ellis, supra at 636 and cases cited; Mass.R.Civ.P. 56(e). The affidavits of Barthelmes and Lamagdaliene, “based on information and belief,” demonstrate neither plaintiffs’ personal knowledge of, nor the specific facts establishing, Martineau’s publication of her “prejudiced and mean” statement to parties who did not have a right to know, or a duty to report to Olympus. See Ellis, 41 Mass.App.Ct. at 636. See also Bratt v. International Bus. Mach. Corp., 392 Mass. 508, 509 (1984); Foley v. Polaroid Corp., 400 Mass. 82, 94-95 (1987) (reaffirming Bratt).
Moreover, these statements directly contradict the plaintiffs’ earlier sworn deposition testimony, and as such, must be disregarded. See Geller v. Allied-Lyons PLC, 42 Mass.App.Ct. 120, 121 n. 2 (1997) (disregarding subsequent statements in affidavit that contradicted earlier deposition testimony). See also American Employers’ Ins. Co. v. Horton, 35 Mass.App.Ct. 921, 923 n. 2 (1993); O’Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993).
This court is thus left to consider the plaintiffs’ sworn deposition testimony. Specifically, Barthelmes testified that the only known allegedly defamatory statement Martineau published was that Barthelmes was “prejudiced and mean.”[14] Similarly, Lamagdaliene testified that she did not know whether Paula spoke to Rahm, and if she did, Lamagdaliene did not know the “exact statements” Martineau uttered that purportedly defamed her, or whether Mar-tineau spoke to other parties.[15]
After examining the alleged statement in its totality, and considering all the words used, the circumstances surrounding it, how it was disseminated and the audience to which it was addressed, this court concludes as a matter of law, that the reported facts fall far short of demonstrating actionable slanderous defamation. See Travers v. Shane, Civil Action No. 92-1489, 1995 WL 809549, at *1 (Mass.Super.Ct. 1995) [4 Mass. L. Rptr. 141] (exhaustively examining colloquial use of phrase “fucking bitch” and determining as a matter of law, it was not a slanderous vituperative outburst); Ellis v. Safety Ins. Co., 41 Mass.App.Ct. at 635; Foley v. Lowell Sun Pub. Co., 404 Mass. at 11. Cf. Zereski, supra at *4-5.
b. Olympus — Defamation Respondeat Superior
As for Olympus, the plaintiffs assert that since Martineau reported her concerns to her supervisors, Holly Ann Peck and Linda Rahm for whom Olympus was arguably responsible, Olympus should be held accountable. I disagree.
“An employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer’s legitimate interest in the fitness of an employee to perform his or her job.” Bratt, supra at 509. If the publication furthers a legitimate business interest of the employer, and the publication is not excessive or reckless, the employer enjoys a conditional privilege to make such statements. Id. At 512, 514-15.
Here, Olympus established an anti-discrimination and anti-harassment policy, and trained and distributed a written copy of such policy to its employees, including both plaintiffs. Although the precise goal of such policy is unknown, it is reasonable to conclude that Olympus’ reporting mandate was to both protect its employees from unwanted and unprofessional behavior, and to establish an internal reporting procedure to eliminate potentially costly civil harassment or discrimination suits. This court cannot say that Martineau’s report to Rahm and Holly Ann Peck in accordance with Olympus’ policy did not further Olympus’ legitimate business interest.
Furthermore, both plaintiffs undisputedly report that they published what they believed Martineau said, to other parties who admittedly had no “need to know” the reported information.[16] Any “ridicule, scorn or contempt in a considerable and respectable class of the community” that the plaintiffs may have suffered, was created by their own, and not Olympus’ excessive, defamatory publications. Accordingly, this court concludes as a matter of law, that Count VI sounding in respondeat superior, must fail; Olympus enjoyed a conditional privilege to discuss the industry and professionalism of its supervising employees. See Bratt, supra at 512-15.
The defendants’ motion for summary judgment as to Counts III and VI is hereby ALLOWED.
3. Count V — Negligent Investigation
In Count V of their amended complaint, the plaintiffs aver that after Martineau lodged a formal complaint concerning an alleged conversation, pursuant to Olympus’ sexual harassment policy, Regional Director, Rahm, met with the plaintiffs and asked if they recalled the conversation.[17] It is uncontroverted that both plaintiffs discussed Martineau’s sexuality.[18] The plaintiffs complain, however, that Olympus should have obtained “formal statements” to “ascertain the plaintiffs’ version of relevant events” prior to their termination. This court disagrees.
Assuming without deciding, but doubting, that the plaintiffs’ contention is accurate, it is undisputed that Olympus, and not the plaintiffs, initiated the investigation in response to a complaint lodged by its em *622 ployee pursuant to Olympus’ established anti-harassment policy. The law is clear on this point: “an investigator’s duty runs to the person or entity on whose behalf the investigation is conducted not to the person being investigated. A slipshod or incomplete investigation, without more, is a disservice to the one who commissioned the investigation, not to its subject." O’Connell v. Bank of Boston, 37 Mass.App.Ct. at 419 (emphasis added) (internal quotation marks and citations omitted). Fredette v. Respite House of Fitchburg, 1995 WL 809520 at *2-3.
Based on the foregoing, this court concludes that as the subjects of Olympus’ investigation, the plaintiffs lack standing to bring a claim for negligent investigation; summary judgment must be granted to the defendants on this Count.
CONCLUSION
Affording the plaintiffs the continuance and delay they seek at this late and final hour would violate the spirit and intent of Rule 56(f). Moreover, given that the role of summary judgment is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required,” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Supp.2d at 146-47, in light of the fact that the plaintiffs have utterly failed to demonstrate with countervailing materials, the elements of (1) intentional infliction of emotional distress, (2) defamation, (3) defamation — respondeat superior, or (4) negligent investigation, this court finds that there is absolutely no evidence from which a reasonable jury could find in the plaintiffs’ favor on any count of either their complaint or amended complaint.
Mass.R.Civ.P. 56(c) thus mandates entry of summary judgment in favor of the defendants.
ORDER
For the reasons set forth above, the plaintiffs’ motion to extend the tracking order pursuant to Sup. Ct. Standing Order 1-88(D) (converted into a Rule 56(f) motion to continue the time to conduct discovery) is DENIED, and the defendants’ motion for summary judgment, pursuant to Mass.R.Civ.P. 56(c) is ALLOWED.

 See Background section, infra.

 On December 3, 1999, this court (Fecteau, J.) converted the plaintiffs’ Motion into one for additional time to complete discovery under Mass.R.Civ.P. 56(f) and deferred a ruling to the judge hearing the defendants’ summary judgment motion.

 See Barthelmes Deposition Transcript (“Barthelmes Depo.’j at 36-37 attached to Affidavit of Rosemarie J. Nevins in Support of Defendants’ Motion to Dismiss (“Nevins Aff.”) as Exhibit B; Lamagdaliene Deposition Transcript (“Lamagdaliene Depo.”) at 36-38 attached to Nevins Aff. as Exhibit C.

 It is unclear from the reported record when, exactly, the alleged conversation between Peck and the plaintiffs occurred.

 See Affidavit of Linda Rahm (“Rahm Aff.”) attached to Nevins Aff. as Exhibit A.

 See Barthlemes Depo. at 57-58; Lamagdaliene Depo. at 49. There is no evidence of either any additional alleged defamatory statements by Martineau to Rahm, or whether Martineau repeated any defamatory comments to others. See Barthlemes Depo. at 42; Lamagdaliene Depo. at 38, 49, 51 and 59.

 See Barthelmes Depo. at 38-39; Lamagdaliene Depo. at 41; Rahm Aff.

 See Rahm Aff. at para. 19. Barthelmes admits having discussed her termination and the incidents leading thereto, with Lamagdaliene, Rhea Boscolo, Steve Vera, the administrator of the Webster Manor facility, her friends, family and potential employers. Barthelmes Depo. at 63-65. Similarly, Lamagdaliene admits having discussed her termination and the incidents leading thereto, with her boyfriend, Peter Shatos, and Michael Goodwin and his wife. See Lamagdaliene Depo. at 34.

 The language of Rule 56(f) tracks the language of the corresponding Federal Rule. Specifically, Mass.R.Civ.P. 56(f) reads:
Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
In construing the Massachusetts rules of civil procedure, this court is “guided by judicial interpretations of the cognate Federal rule absent compelling reasons to the contrary or significant differences in content.” See Doe v. Senechal, 431 Mass. 78, 81 n. 8 (2000), quoting Van Christo Advertising, Inc. v. M/A-COM/LCS, 426 Mass. 410, 414 (1998).

 Here, the plaintiffs have failed to file a supporting affidavit. Ordinarily, such an omission is fatal. Brick Constr. Corp. v. CEI Development Corp., 46 Mass.App.Ct. 837, 840 (1999). Under the very limited facts of this case, and since this court, on its own initiative converted the plaintiffs’ motion to extend the tracking order into a motion to pursuant to Rule 56(f), this court finds that it would be inequitable to hold the plaintiffs to the rigid affidavit requirement of the Rule. See Acosta-Vega v. Brown, 14 F.Supp. 177, 181-82 (D.Puerto Rico 1998) (finding plaintiffs failure to file affidavit not fatal to Rule 56(f) motion). See also Resolution Trust Corp., supra at 1203 (“Consistent with the salutary purposes underlying Rule 56(f), . . . courts should construe motions that invoke the rule generously, holding parties to the rule’s spirit, rather than its letter”).

 See Affidavit of Lamagdaliene at paras. 3 &4; Affidavit of Barthelmes at paras. 5 & 6.

 Barthelmes Depo. at 39 and 58.

 See Lamagdaliene Depo. at 31, 49-51 and 59; Barthelmes Depo. at 71.

 See Barthelmes Depo. at 63-65; Lamagdaliene Depo. at 34 and 39.

 See Amended Complaint at para. 7.

 See Barthelmes Depo. at 38-39; Lamagdaliene Depo. at 41; Rahm Affidavit.